# INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, Appellants,

v.

**James D. HODGSON, Secretary of Labor, et al.**

No. 74–1165.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 17, 1975.

Decided June 26, 1975.

---

**25.** *Id.* at 14768–69.

**26.** We need not reach such issues as whether the Consumers have standing here, whether

374

Bernard Dunau, Washington, D. C., with whom Plato E. Papps and Mozart G. Ratner, Washington, D. C., were on the brief for appellants.

Nicholas Gilman, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Robert M. Werdig, Asst. U. S. Attys., were on the brief for appellee Hodgson.

Peter W. Tredick, Washington, D. C., with whom John J. Ross and Patrick M. Raher, Washington, D. C., were on the brief for appellee Boeing Co.

Before McGOWAN and MacKINNON, Circuit Judges, and VAN PELT,* Senior District Judge for the District of Nebraska.

VAN PELT, Senior District Judge:

Appellant International Association of Machinists & Aerospace Workers, AFL–CIO, (hereinafter Union) challenges the decision of the Secretary of Labor not to issue a pervasive wage determination

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

pursuant to the Service Contract Act, 41 U.S.C. § 351 et seq. (1965) for the Kennedy Space Center and contests the validity of a service contract awarded to the Boeing Company by the National Aeronautics and Space Administration (hereinafter NASA) which was bid and negotiated without the benefit of such a wage determination. The Union seeks damages from the Boeing Company based upon a retroactive application of a subsequent wage determination. Ruling on cross-motions for summary judgment, the district court found for defendants [1] and the Union appealed. We affirm.

## I. THE SERVICE CONTRACT ACT

The Service Contract Act of 1965, as originally enacted, controls this appeal. The purpose of the Act is to insure that service employees working on government contracts are not paid wages below the prevailing wages being paid in the locality by non-government contractors. To carry out this purpose the Act provides that:

"Sec. 2. (a) Every contract (and any bid specification therefor) entered into by the United States or the District of Columbia in excess of $2,500, except as provided in section 7 of this Act, whether negotiated or advertised, the principal purpose of which is to furnish services in the United States through the use of service employees, as defined herein, shall contain the following:

(1) A provision specifying the minimum monetary wages to be paid the various classes of service employees in the performance of the contract or any subcontract thereunder, as determined by the Secretary, or his authorized representative, in accordance with prevailing rates for such employees in the locality, which in no case shall be lower than the minimum specified in subsection (b).

(2) A provision specifying the fringe benefits to be furnished the various classes of service employees, engaged in the performance of the contract or any subcontract thereunder, as determined by the Secretary or his authorized representative to be prevailing for such employees in the locality. Such fringe benefits shall include medical or hospital care, pensions on retirement or death, compensation for injuries or illness resulting from occupational activity, or insurance to provide any of the foregoing, unemployment benefits, life insurance, disability and sickness insurance, accident insurance, vacation and holiday pay, costs of apprenticeship or other similar programs and other bona fide fringe benefits not otherwise required by Federal, State, or local law to be provided by the contractor or subcontractor. The obligation under this subparagraph may be discharged by furnishing any equivalent combinations of fringe benefits or by making equivalent or differential payments in cash under rules and regulations established by the Secretary." 41 U.S.C. § 351(a)(1) and (2) (1965)

Section 4(b) of the Act, at the time the facts in this case arose, provided that:

"The Secretary may provide such reasonable limitations and may make such rules and regulations allowing reasonable variations, tolerances, and exemptions to and from any or all provisions of this Act as he may find necessary and proper in the public interest or to avoid serious impairment of the conduct of Government business." 41 U.S.C. § 353(b) (1965)

The Act is triggered with respect to a particular service contract by the submission from the contracting agency to the Department of Labor of a "Notice of Intention to Make a Service Contract." Such a "Notice" is required not less than thirty days prior to issuance of invitations for bids. In the "Notice" the contracting agency informs the Department of Labor as to the nature of the con-

---

1. Memorandum opinion of October 18, 1973, reported at 72 CCH Wage-Hr. Lab. Case ¶ 32,-963 and 21 BN WH Cases 344.

tract, the approximate number of employees involved, and also provides any wage data readily available to the agency. The Department of Labor then makes a wage determination, which is based upon a comprehensive wage survey of the locality by the Bureau of Labor Statistics, unless the Department determines no determination is to be made. If a wage determination is issued, no service contract can be made based on a lower pay scale than that so determined.

## II. EVENTS GIVING RISE TO THIS LAWSUIT

In 1967 the Department of Labor decided not to issue a wage determination for Brevard County, Florida, where three federal facilities operate, to-wit: Kennedy Space Center (KSC), Kennedy Air Force Station, and Patrick Air Force Base. In March of 1967 a survey was made in the area following an on-site visit in February, 1967, to obtain information about wages generally paid in the locality (J.A. p. 21). It revealed that NASA and Air Force service contractors were generally paying wages equal to or higher than those prevailing in the private sector in Brevard County. However, janitors, porters, and cleaners, who were not organized as were the contract service personnel at KSC, did appear to be receiving less pay as compared to the private sector and a limited wage determination was issued covering those jobs.

In May, 1970, NASA sent the Department of Labor a "Notice of Intention to Make a Service Contract." On June 2, 1970, the Department responded that the prior wage determination of 1967 was applicable. No wage determination was issued except for janitors, porters, and cleaners.

On November 23, 1970, NASA selected from among seven bids submitted the Boeing Company's bid for performance of support services at KSC. Trans World Airlines, Inc. (TWA), had been performing these services pursuant to a cost-plus-award-fee contract, which was to expire on March 31, 1971. The employees of TWA were represented in collective bargaining by the appellant Union, and the terms of their employment were governed by a national collective bargaining agreement between TWA and the Union. The Boeing Company had also provided services at KSC on certain "hardware contract" work involving missile assembly. Members of the Union were performing this work for the Boeing Company and were being paid in accordance with a national collective bargaining agreement between Boeing and the Union. The Boeing-Union agreement set a wage scale below that of the TWA-Union agreement. Boeing's bid, involved in this case, was based on the wage rates and fringe benefits as provided in the Boeing-Union hardware contract. The Boeing Company thus was able to and did underbid TWA on the basis of labor costs.

TWA protested the selection of the Boeing bid and the Union concluded to seek legal recourse by means of this case and thereby avoid the reduction in the existing wage scale it enjoyed with TWA. The Union also sought observance of the Union-TWA agreement by the Boeing Company as a successor contractor.[2] The Union also filed unfair labor practice charges against Boeing.[3] The Union protested to NASA, but NASA refused to revise the wage rates and opposed the Union's suggestions that Boeing adopt the TWA rates. TWA filed a protest with the Comptroller General of the contract award to Boeing. The Comptroller General rejected the protest on February 26, 1971. The Union again protested to the Comptroller General and received another rejection

---

2. Boeing v. I.A.M.A.W., 351 F.Supp. 813 (M.D. Fla.1972), aff'd, 504 F.2d 307 (5th Cir. 1974), (The Union's argument that Boeing is bound by the TWA-Union agreement as a successor contractor was rejected.)

3. NLRB dismissed the complaint Nov. 1, 1974, 214 NLRB No. 32. On Feb. 12, 1975, the Union filed a petition to review with this court, I.A.M.A.W. v. NLRB, No. 75–1056.

on June 8, 1971. Meanwhile, on April 1, 1971, Boeing took over performance of the support service work at KSC. Boeing hired a number of incumbent TWA workers as new employees with zero seniority and at lower wages. Thus, some of the same workers who are members of the same Union who held the same jobs at the same place as the jobs they held with TWA were now being paid less money by Boeing for the same work and were without seniority.[4]

Subsequent to Boeing's takeover on April 1, 1971, the Air Force in August or September of 1971 gave notice of intent to make a service contract for support services at the Eastern Test Range in Brevard County, Florida.[5] The Secretary of Labor at first adhered to the 1967 decision not to issue a wage determination. Later he reconsidered and ordered the Bureau of Labor Statistics to conduct a wage survey in Brevard County. The survey was conducted in October of 1971, and was completed by November 24, 1971. During this period the Boeing-Union national agreement expired and a new agreement providing for an increase in wages was entered into on December 13, 1971 effective for the period from November 16, 1971 to October 1, 1972.

The Secretary of Labor issued a wage determination on January 3, 1972 to become effective as of February 1, 1972 regarding support service contract work at Kennedy Space Center. This wage determination, as well as the new national agreement, controlled wages paid after February 1, 1972. Thus, the dispute before us centers only on the wages and benefits paid by the Boeing Company in the ten months period from April 1, 1971 to February 1, 1972. Admittedly the wages now paid are higher than those of Boeing's "hardware contract."

## III. STANDING

■ The Government argues that the Union has no standing to challenge the validity of NASA's contract with Boeing because the alleged injury is not "arguably within the zone of interests to be protected or regulated by the statutes" which the Department of Labor is claimed to have violated. Data Processing Service v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). The statute in question is the Service Contract Act of 1965. The Union argues that the decision of the Secretary of Labor to apply the 1967 decision not to make a wage determination in 1970 was not authorized by the Section 4(b) exemption and contravenes the purpose of the Act. The Government identifies the interests to be protected by the Act as including "the assurance of payment of wages at or above the existing minimum wage rate and at least equal to the prevailing rates for similar employment in the locality and the inclusion of certain fringe benefits" (Government brief p. 20). The Government argues that the Union is not claiming that the wages paid by Boeing were below the minimum wage or below the prevailing rates in the locality of Brevard County but only that Boeing paid less than TWA. It urges that the interests enumerated by the Act have not been encroached. However, the appellant's reply brief makes clear the Union's twofold contention, namely, that Boeing not only paid less than TWA but also paid less than the rate prevailing in the locality (Appellant Reply Brief pp. 3–9) and thus its claim that interests enumerated in the Act have been encroached. The court concludes the Union does have standing. See Pesikoff v. Sec. of Labor, 163 U.S.App.D.C. 197, 501 F.2d 757 (1974).

## IV. REQUEST FOR RELIEF

■ The Union seeks money damages from the Boeing Company for the differ-

---

4. Of the Boeing work force of 981, 380 were TWA incumbents. See 504 F.2d 307, 309–310 (5th Cir. 1974).

5. The Eastern Test Range is part of the Air Force complex previously described as Kennedy Air Force Station and Patrick Air Force Base.

ence in wages and benefits between the amount Union members earned between April 1, 1971 and February 1, 1972 and the amount the Union members would have earned had the January 3, 1972 wage determination been in effect during the ten months period. The Union says it seeks the damages as a "vindication" of the Service Contract Act and not in an attempt to enforce the contract with retroactive application of the wage determination. It is the Union's view that the KSC support services contract of November 23, 1970 awarded to Boeing is void and must be set aside and resolicited by NASA because the contract lacked the wage determination provision. The Union ascribes the alleged wrongful omission of the wage determination to the Secretary of Labor.

The Union analogizes its request for relief to the statutory remedy provided in Section 3(a) of the Act.[6] Under Section 3(a) the party responsible for the violation of a wage determination is liable for the amount of underpayment. In this case, however, there simply was no wage determination for the Boeing Company to violate, and the lack of such a wage determination should not be ascribed to Boeing. This is particularly true where as here the Union ascribes the omission of the wage determination to the Secretary. The Union argues, however, that no lesser relief than provided in Section 3(a) is appropriate in a case where, in the Union's view, a wage determination is wrongfully omitted from a service contract, since the damage done to the Union's members is the same. While the injury to the Union members may be the same as it would be

where a wage determination is violated, the causation is not. The lack of a wage determination provision in the contract is not attributable to any action by Boeing. It is attributable only to the Secretary of Labor.

The enforcement of Section 3(a) is by statute the province either of the head of the contracting federal agency or the Secretary of Labor.[7] When the Secretary issued the wage determination effective February 1, 1972, Boeing complied. Boeing has not violated that wage determination or any other which is applicable here.

A service contract can be canceled by the contracting agency under 41 U.S.C. § 352(c) when a violation of a contract stipulation is found. Since there is no wage determination present in the Boeing-NASA contract, no violation of a wage determination can occur and NASA has no grounds upon which to cancel the contract.

The Union further argues that as between the innocent employees who received reduced wages and the Boeing Company that Boeing should stand the loss because Boeing is not entitled to rely upon a contract illegally made. Yet it is the Secretary of Labor who allegedly acted wrongfully in omitting the wage determination. Boeing was entitled to bid on the specifications as it found them. Boeing based its bid so far as labor costs were concerned on the wage rates and fringe benefits contained in its collective bargaining agreement with the Union. Within the context of the Serv-

---

6. "(a) Any violation of any of the contract stipulations required by section 351(a)(1) or (2) or of section 351(b) of this title shall render the party responsible therefor liable for a sum equal to the amount of any deductions, rebates, refunds, or underpayment of compensation due to any employee engaged in the performance of such contract. So much of the accrued payment due on the contract or any other contract between the same contractor and the Federal Government may be withheld as is necessary to pay such employees. Such withheld sums shall be held in a deposit fund.

On order of the Secretary, any compensation which the head of the Federal agency or the Secretary has found to be due pursuant to this chapter shall be paid directly to the underpaid employees from any accrued payments withheld under this chapter." 41 U.S.C. § 352(a)

7. "(b) In accordance with regulations prescribed pursuant to section 353 of this title, the Federal agency head or the Secretary is hereby authorized to carry out the provisions of this section." 41 U.S.C. § 352(b)

ice Contract Act of 1965, this was a legal, not an illegal agreement.

 The resulting contract is valid as between Boeing and the United States of America despite the lack of a wage determination provision. The damage to Union members, according to the Union's argument, comes by the alleged failure of the Secretary of Labor to do what they claim he is required to do under the Act, and not by any act of the Boeing Company. Whether the Boeing-Union national agreement was applicable to Boeing's performance of support services work at KSC and whether Boeing properly or improperly based its bid on that agreement is not before the court on this appeal.[8] Moreover, such inquiry does not bear on the validity of the bid and contract under the Service Contract Act.

The issue here is whether the Service Contract Act provides any means by which the Union can recover damages from Boeing. The court finds nothing within the Act that would support what the Union has described as "vindication." While the Act does provide for enforcement of wage determinations by the Government against offending employers, including the recovery of amounts of underpayment and contract cancellation, the Act does not provide any remedy against employers for the alleged omissions of the Secretary of Labor.

 The remainder of the Union's arguments attack the decision of the Secretary of Labor not to issue a wage determination.[9] Such arguments might well be more soundly addressed to the Court of Claims. We express no opinion as to the validity of the Union's argument in that context, but simply note that the Union demands damages under the Service Contract Act from the Boeing Company. The demand cannot suc-

ceed not only because the Act does not provide such a remedy but also because the Boeing Company has not violated the Act.

The judgment of the district court must be affirmed.

---

8. See footnote 3, *supra*.

9. In 1972 Congress amended 41 U.S.C. § 353(b) and added 41 U.S.C. § 358. Pub.L. 92–473. While Congress may have further re-

stricted the Secretary of Labor's discretion not to issue a wage determination, the 1972 amendments do not create new remedies against contractors.