731 F.2d 711
 26 Wage & Hour Cas. (BN 1207, 101 Lab.Cas. P 34,547
 DISTRICT LODGE NO. 166, INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE WORKERS, AFL-CIO,
Plaintiffs-Appellants,
v.
TWA SERVICES, INC., National Aeronautics and Space
Administration, Raymond J. Donovan, Secretary of
Labor, Defendants-Appellees.
 No. 82-3159.
 United States Court of Appeals,
Eleventh Circuit.
 May 3, 1984.
 
 Mozart G. Ratner, P.C., Washington, D.C., Joseph P. Manners, Gen. Counsel, IAMAW, Washington, D.C., George H. Tucker, Miami, Fla., for plaintiffs-appellants.
 Douglas Hendriksen, Kennedy Space Center, Fla., for NASA.
 James M. Blue, Tampa, Fla., June Wagoner Edwards, U.S. Dept. of Justice, Washington, D.C., for TWA Services, Inc.
 Appeal from the United States District Court for the Middle District of Florida.
 Before RONEY and HENDERSON, Circuit Judges, and DYER, Senior Circuit Judge.
 DYER, Senior Circuit Judge:
 
 
 1
 This appeal involves the application of the Service Contract Act of 1965, (SCA) as amended, 41 U.S.C. Secs. 351 to 353 (1976), to the Concession Agreement entered into between TWA Services, Inc. (TWAS), and the National Aeronautics and Space Administration (NASA), for the Visitors Information Center (VIC) at the Kennedy Space Center.
 
 
 2
 The district court found that the SCA covers the VIC Concession Agreement, but that the plaintiff is not entitled to recover from TWAS retroactive wage and fringe benefits between the date of the succession of TWAS under the Concession Agreement and the date of judicial declaration of coverage. The district court also found that mandamus does not lie to compel the Secretary of Labor to issue a retroactive wage determination for the period in question, or to compel NASA to amend the Concession Agreement to reflect this retroactive wage determination. Plaintiff asserts that these determinations are erroneous as a matter of law. We disagree and affirm.
 
 
 3
 TWAS has operated the VIC at the Kennedy Space Center since 1968 under a Concession Agreement with NASA, under the terms of which TWAS provides bus tours to visitors to the VIC, sells souvenirs, and maintains a cafeteria which caters to VIC visitors. In November 1978 the Concession Agreement was modified (Modification 9 to NAS 10-5755) by which TWAS agreed beginning November 8, 1978, to perform the landscaping function at the VIC which had previously been performed by Expedient Services, Inc. (ESI) pursuant to a base-wide contract under which ESI performed all the roads and ground maintenance work at the Center. ESI was a non-union company, its employees were not covered by a collective bargaining agreement. Likewise, TWAS assumed responsibility for facility maintenance at the VIC on January 1, 1979, which, prior to Modification 9, had been performed by Boeing Services International (BSI) whose contract with NASA required it to perform maintenance at all other center facilities. The employees of BSI who performed these functions were represented by the plaintiff union and were covered by a collective bargaining agreement. The contracts between BSI and ESI and NASA were treated as covered by the Service Contract Act.
 
 
 4
 At the time of the transfer of the work to TWAS, there were no employees transferred from either BSI or ESI, nor were the BSI or ESI forces reduced, and both companies continued to perform the facilities and landscape maintenance functions throughout the center, except at the VIC. The additional work transferred to TWAS by Modification 9 was performed by new hires of TWAS. As a result, no individual was ever paid less money than he was being paid under any prior contractual arrangement.
 
 
 5
 From the time that TWAS was first awarded the VIC concession in 1968, NASA took the position that the concessionaire agreement was exempt from the SCA by virtue of the statute and 29 C.F.R. Sec. 4.133, a Department of Labor regulation exempting from the coverage of the Act concessionaire agreements at national parks.[1]
 
 
 6
 The conclusion reached by NASA was also in reliance upon a 1973 amendment to the National Aeronautics and Space Act of 1958[2] which granted to the NASA Administrator discretionary authority to enter into Concessionaire Agreements to provide facilities for visitors to NASA centers. 42 U.S.C. Sec. 2473(c)(11) (1976). This amendment was intended to grant NASA authority similar to the authority granted the U.S. Parks Service to provide visitor services at national parks by Concessionaire Agreements.[3]
 
 
 7
 Beginning in 1973 there was an exchange of letters between the Department of Labor and NASA, the former asserting that the Concessionaire Agreement was subject to the SCA, and the latter responding that it was exempt from SCA. At the time of Modification 9, when the scope of the work was modified to include landscaping and facility maintenance at the VIC, the coverage issue was raised again but the Department of Labor took no step to compel NASA to require compliance by TWAS with Sec. 353(c).[4]
 
 
 8
 Suit was instituted on August 20, 1979 by plaintiff. On November 17, 1981, the district court ruled that the SCA applied to the VIC Concession Agreement entered into between TWAS and NASA and further found that the 29 C.F.R. Sec. 4.133 exemption did not apply to the VIC Concession.[5]
 
 
 9
 On August 13, 1982 the Department of Labor issued a wage determination applicable to the VIC Concession Agreement effective as of November 17, 1981, the date of the district court's coverage ruling.
 
 
 10
 After a non-jury trial the district court entered a final judgment denying the relief sought by plaintiff.
 
 
 11
 The remedy plaintiff seeks is to recover the difference in wages and fringe benefits actually paid from those that would have been paid if the 1978 wage determinations had been made part of the VIC Concession Agreement. Further, it seeks the difference in wage and fringe benefits actually paid and those that would have been paid had subsequent wage determinations been issued for the new VIC Concession Agreement entered into between NASA and TWAS in 1979.
 
 
 12
 Essentially, plaintiff asserts two causes of action. Against NASA we are asked by mandamus to compel NASA to request an appropriate wage determination, to compel the Department of Labor to issue them, and to compel the agencies to enforce the wage determinations retroactively against TWAS. Against TWAS, plaintiff seeks to recover directly for the differences.
 
 
 13
 Taking the contentions in inverse order, we hold that the plaintiff cannot maintain a private right of action against TWAS under the SCA.[6]
 
 
 14
 Plaintiff lays great stress upon the undisputed fact that the 1972 amendment[7] adding subsection (c) of Sec. 353 was prompted by Congress' dissatisfaction with the Secretary's inconsistent administration of the Act in granting exemptions from coverage. Building upon this premise, plaintiff contends that while it may be arguable that it did not have standing prior to 1972, the amendments created a private right of action thereafter. Plaintiff suggests that Sec. 353(c) imposes a mandatory obligation directly upon private parties, i.e., successor government service contractors. Moreover, it argues that the prohibitory language creates a correlative right in the employees of successor contractors that include plaintiff in this case.
 
 
 15
 Plaintiff submits that there is nothing in the legislative history of SCA that indicates that Congress meant to exclude private actions for enforcement of Sec. 353(c). Finally it argues that there is a private right of action under Sec. 353(c) that must be distinguished from the administrative remedies available to the Secretary in Sec. 352. For these reasons, plaintiff urges us to disavow the holding of the Ninth Circuit in Miscellaneous Service Workers, Local 427 v. Philco-Ford Corp., 661 F.2d 776 (9th Cir.1981). We are unpersuaded.
 
 
 16
 In Philco-Ford, the court properly pointed out that the "question of whether a private right of action is conferred by a federal statute is essentially one of interpreting congressional intent," and then looked to the test announced in Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), as follows:(1) Is the plaintiff "one of a class for whose especial benefit the statute was created?" (2) Is there any indication of a legislative intent to fashion such a remedy? (3) Is it consistent with the underlying legislative scheme to imply such a remedy? (4) Is the cause of action one traditionally relegated to state law, so that a federal cause of action would be inappropriate?
 
 
 17
 661 F.2d at 780 (citing Cort v. Ash, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975).
 
 
 18
 In applying the test, the court found that the first question must be answered affirmatively, because the legislative history of the 1972 amendments make clear that they were enacted for the benefit of employees providing service work under government contracts. Id.
 
 
 19
 Concerning the legislative history, the court found that "it is apparent that nothing supports the inference of a legislative intent to create private remedies under the act." Id. Rather, the focus was upon a " 'more efficient administration' of the SCA by narrowing the Secretary's discretion in deciding whether to issue a wage determination for all government service contracts."[8] Moreover, the court continued, "it would be flatly inconsistent with the express provision of a limited governmental cause of action to imply a wide-ranging private right of action as an alternative to a government suit." 661 F.2d at 780.
 
 
 20
 Finally, the court noted that other courts that have considered the question have concluded that there is no implied private right of action under the SCA. Id. at 781 (citing International Ass'n of Mach. & Aero. Wkrs. v. Hodgson, 515 F.2d 373 (D.C.Cir.1975); Service Employees International, Local No. 36 v. General Services Administration, 443 F.Supp. 575, 580 (E.D.Pa.1977); Dodd v. Blackstone Cleaners, 61 Labor Cases (CCH) p 32,281 (N.D.Tex.1969)).
 
 
 21
 The Ninth Circuit's in-depth analysis of the SCA, and its correct application of the Cort test, fully supports its conclusion that both before and after the 1972 amendments, Congress did not intend to authorize private suits to enforce the Act. We agree.
 
 
 22
 The lack of a private right of action under the SCA is also discussed in Hodgson, 515 F.2d 373, where as here, a service contract was awarded without a wage determination by the Secretary of Labor and thereafter such a determination was made prospectively. The union sued to recover the higher wages that would have been due in the interim period. The court denied relief, saying:
 
 
 23
 Under Section 3(a) the party responsible for the violation of a wage determination is liable for the amount of underpayment. In this case, however, there simply was no wage determination for the Boeing Company to violate, and the lack of such a wage determination should not be ascribed to Boeing. This is particularly true where as here, the Union ascribes the omission of a wage determination to the Secretary ... While the injury to the Union members may be the same as it would be where a wage determination is violated, the causation is not. The lack of a wage determination provision in the contract is not attributable to any action by Boeing. It is attributable only to the Secretary of Labor.
 
 
 24
 The enforcement of Section 3(a) is by statute the province either of the head of the contracting agency or the Secretary of Labor. When the Secretary issued the wage determination effective February 1, 1972, Boeing complied. Boeing has not violated that wage determination or any other which is applicable here.
 
 
 25
 ....
 
 
 26
 The Union further argues as between the innocent employees who received reduced wages and the Boeing Company that Boeing should stand the loss because Boeing is not entitled to rely upon a contract illegally made. Yet it is the Secretary of Labor who allegedly acted wrongfully in omitting the wage determination. Boeing was entitled to bid on the specifications as it found them....
 
 
 27
 ....
 
 
 28
 [T]he Act does not provide any remedy against employers for the alleged omission of the Secretary of Labor....
 
 
 29
 ... The demand cannot succeed not only because the Act does not provide such a remedy, but also because the Boeing Company has not violated the Act.
 
 
 30
 515 F.2d at 379.
 
 
 31
 We recognize that the court's holding in Hodgson applied to the 1965 Act prior to the 1972 amendments and that the purpose of the Amendments was to restrict the Secretary of Labor's discretion not to issue a wage determination. We, however, do not share the view of plaintiff that the Amendments created a private right of action, rather, we endorse, as did the court in Philco-Ford, supra, the Hodgson court's observation that, "[T]he 1972 Amendments do not create new remedies against contractors." 515 F.2d at 379, n. 9.
 
 
 32
 We hold that plaintiff cannot maintain a private right of action under the SCA against TWAS.
 
 
 33
 Plaintiff's alternative argument is that if there is no private right of action under the SCA, it may maintain this suit under Sec. 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. Sec. 185 (1982). Plaintiff does not take issue with the district court's finding that there was no agreement between the parties to incorporate the wage and fringe benefits paid by TWAS' predecessors nunc pro tunc if Modification 9 and its successors were held to be covered, but argues that the wages and fringe benefits were incorporated in the contract by operation of law. We disagree. We have found no case and plaintiff has cited none that would authorize a suit under Sec. 185 where the contract is silent on the issue the Union attempts to enforce against the employer. TWAS followed the contract as written and was required to do no more. Barrentine v. Arkansas-Best Freight System, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) and Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) relied upon by plaintiff are inapposite. Barrentine was a suit brought by employees under the Fair Labor Standards Act, 29 U.S.C. Sec. 201-219 (1976) for compensable time denied them. Alexander was a suit brought under Title VII of the Civil Rights Act of 1964 for discriminatory discharge. Both cases held that an arbitration decision against the employees under a collective bargaining agreement could not foreclose claims of the employees based upon rights arising out of statutes designed to provide minimum substantive guarantees to individual workers, since both statutory schemes provided broad access to the courts. In these cases the courts did not incorporate in the contracts by operation of law the provisions of statutory law it invoked as plaintiffs would have us do here. Instead, as the court said in Barrentine, citing Alexander, "The court found that in enacting Title VII Congress had granted individual employees a non-avoidable public right to equal opportunities that was separate and distinct from the rights created through the 'majoritarian process' of collective bargaining." Id. 101 S.Ct. at 1443 (citing Alexander, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147). The rights created by the collective bargaining agreement and the rights created by statute are separate and distinct with the right of the employee under Title VII and the FSLA to bring suit spelled out in the statutes. We are not persuaded by these non-analagous decisions under Title VII and the FSLA that plaintiff may proceed against TWAS under LMRA Sec. 301.[9]
 
 
 34
 We now turn to the plaintiff's asserted cause of action against the federal defendants in which it seeks a writ of mandamus ordering the Secretary of Labor to issue a wage determination embodying BSI and ESI wage rates retroactively to Modification 9 of the completed Concession Agreement NAS 10-755, computation by the Secretary of the amount of unpaid compensation allegedly due to employees performing work under the completed VIC contracts, withholding from NASA of amounts due TWAS and depositing them in a special fund, and an order by the Secretary to NASA to pay all sums withheld directly to the TWAS employees in question. We hold that the Secretary has no clear and undisputed duty to compel TWAS to pay for his mistake, and, further, hold that the equities do not dictate the relief sought by the plaintiff.
 
 
 35
 Plaintiff takes issue with the district court's characterization as "legally erroneous" NASA's and the Secretary's treatment of the VIC concession contracts as not covered. Plaintiff insists that the non-issuance of a wage determination was "ultra vires", and that the back wage payments, retroactive to the effective date of the Secretary's misinterpretation, must be made to employees who would have been covered had the Secretary interpreted the Act correctly in the first place. See Addison v. Holly Hill Fruit Products, 322 U.S. 607, 64 S.Ct. 1215, 88 L.Ed. 1488 (1944). In this way the injured parties will be placed in the situation they would have occupied if the wrong had not been done. See Albermarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Pointing out that Sec. 358 in terms applies to "all contracts subject to this chapter" and that "[o]bligatory Congressional enactments are held to govern federal contracts," G.L. Christian & Associates v. United States, 320 F.2d 345, 351, 160 Ct.Cl. 58 (1963), plaintiff argues that the contract must be construed to be covered as a matter of law and neither the contracting agency nor the Secretary is authorized to treat it as not covered. Ergo, an action based upon an ultra vires non-coverage determination is a breach of a mandatory legal duty. But it is not that simple.
 
 
 36
 It is hornbook law that mandamus is an extraordinary remedy which should be utilized only in the clearest and most compelling cases. Though it is a legal remedy, it is largely controlled by equitable principles and its issuance is a matter of judicial discretion. Generally speaking, before the writ of mandamus may properly issue, three elements must coexist: (1) a clear right in the plaintiff to the relief sought; (2) a clear duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available.
 
 
 37
 Carter v. Seamans, 411 F.2d 767, 773 (5th Cir.1969), cert. denied, 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970) (footnotes omitted); See Whitehouse v. Illinois Central Railroad Company, 349 U.S. 366, 75 S.Ct. 845, 99 L.Ed. 1155 (1955).
 
 
 38
 We are not persuaded that there is a clear right in the plaintiff to the relief sought. As we have previously explicated, the SCA does not confer on the plaintiff a private right of action for its enforcement. It is obvious that plaintiff seeks relief by way of mandamus from the federal defendants solely as a means of obtaining back wages from TWAS. Lacking such a right directly under the statute, it urges the court to compel the defendants to undertake actions which would indirectly result in the same back wages from TWAS that it is precluded from seeking directly. We refuse to blind ourselves to the inequity of granting plaintiff relief which is not an end in itself but is merely a means to an end which plaintiff could not obtain except by this end run. We will not put our imprimatur on such an artful misuse of the extraordinary remedy of mandamus.
 
 
 39
 Moreover, we find no "clear, ministerial and non-discriminatory" duty, Kirkland Masonry, Inc. v. Commissioner, 614 F.2d 532, 533-34 (5th Cir.1980) on the part of NASA to the plaintiff to retroactively modify the fully completed Concession Agreements. We find no statutory or regulatory language which supports plaintiff's demand for such unilateral retroactive relief.
 
 
 40
 Finally, we share the district court's findings that upon equitable considerations a mandatory injunction should not issue compelling retroactive wage determinations. The wage determinations were not made because of NASA's view that the contract was not subject to the Act. In this litigation the Secretary took the same position. TWAS was not at fault for any failure to comply with the SCA, yet granting the relief sought by plaintiff will result in no harm to the federal defendants but would directly penalize TWAS. In fact, TWAS has simply not violated the SCA.
 
 
 41
 We are not moved by plaintiff's argument that TWAS is not entitled to equitable consideration because it was aware of and assumed the risk that the coverage question might ultimately be decided against it. It is undisputed that TWAS and plaintiff made a joint trip to Washington during the recompetition period preceding the awarding of the current Concession Agreement and sought to have the Department of Labor issue an SCA wage determination. This attempt was unavailing. Although the plaintiff had been in dispute with NASA since 1966 concerning coverage of the SCA to Concession Agreements, it sought no judicial intervention to test SCA coverage until 1979, after TWAS had been selected, based on a bid which did not include SCA minimums. In view of these circumstances it would be manifestly inequitable for the plaintiff, at this late date, to shift the blame to TWAS and penalize it for plaintiff's lethargy in pursuing the coverage issue.
 
 
 42
 The district court exercised sound discretion in refusing to issue the writ of mandamus.[10]
 
 
 43
 AFFIRMED.
 
 
 
 [1]
 Section 4.144(b) provides:
 It is not considered that the Act was intended to cover every contract, however, which is entered into with the government by a contractor to furnish services, no matter how indirect or remote a benefit the government may derive therefrom. If, for example, a contract with the government grants the contractor the privilege of operating as a concessionaire in a government park for the purpose of furnishing services to the public generally rather than to the government or to personnel engaged in its business, the contract is not considered subject to the Act....
 
 
 [29]
 C.F.R. Sec. 4.133 (1983)
 
 
 [2]
 Act of July 23, 1973, Pub.L. No. 93-74, Sec. 6, 87 Stat. 171, 174 (amending National Aeronautics and Space Act of 1958 Sec. 203(b), 42 U.S.C. 2473(b)) (current version at 42 U.S.C. Sec. 2473(c)(11) (1976))
 
 
 [3]
 S.Rep. No. 179, 93d Cong., 1st Sess. 106 (1973); HOUSE COMM. ON SCIENCE AND AERONAUTICS, H.R.Doc. No. 171, 93d Cong., 1st Sess. 178, 179 (1973)
 
 
 [4]
 (c) Predecessor contracts; employees wages and fringe benefits
 No contractor or subcontractor under a contract, which succeeds a contract subject to this chapter and under which substantially the same services are furnished, shall pay any service employee under such contract less than the wages and fringe benefits, including accrued wages and fringe benefits, and any prospective increases in wages and fringe benefits provided for in a collective bargaining agreement as a result of arm's-length negotiations, to which service employees would have been entitled if they were employed under the predecessor contract: Provided, That in any of the foregoing circumstances such obligations shall not apply if the Secretary finds after a hearing in accordance with regulations adopted by the Secretary that such wages and fringe benefits are substantially at variance with those which prevail for services of a character similar in the locality.
 41 U.S.C. Sec. 353(c) (1976).
 
 
 [5]
 The district court found inter alia:
 Assuming, without specifically ruling on the issue, that 29 C.F.R. Sec. 4.144 constitutes a grant of exemption from the coverage of the SCA pursuant to the Secretary's authority under Sec. 353(b), there is no indication that the exemption so granted applies to the VIC concession contract. There is no mention of the VIC contract in the regulation. Nor is there any evidence that the Secretary has satisfied the procedural and substantive safeguards required by the Act prior to reaching a determination that the VIC contract should be exempted from the coverage of the Act. In the absence of such evidence, the Court finds that 29 U.S.C. Sec. 4.133 has no application to the question presented by the facts herein. In reaching this determination the Court finds it unnecessary to consider further plaintiff's request to declare 29 C.F.R. Sec. 4.133 null, void, and of no force and effect.
 
 
 [6]
 The district court assumed without deciding that the plaintiff could maintain a private right of action against TWAS, but held that it would nonetheless deny plaintiff relief
 
 
 [7]
 Act of Oct. 9, 1972, Pub.L. No. 92-473, Sec. 3, 86 Stat. 789, 789 (amending Service Contract Act of 1965 Sec. 4, 41 U.S.C. Sec. 353 (1970))
 
 
 [8]
 661 F.2d 776 (citing S.Rep. No. 1131, 92d Cong., 2d Sess. 5 (1982); reprinted in 1972 U.S. CODE CONG. & AD.NEWS 3534, 3535)
 
 
 [9]
 Plaintiff's argument that Sec. 353(c) is self-executing and therefore TWAS was bound to pay no less wages and benefits than its predecessors ESI and BSI give us little pause. We agree with the district court that it would "be an absurd proposition to charge one with knowledge of SCA coverage by operation of law, when those whose job it is to enforce the law have stated otherwise."
 
 
 [10]
 Plaintiff challenges the validity of 29 C.F.R. Sec. 4.133(b) and seeks declaratory and injunctive relief under 5 U.S.C. Sec. 704 (1982), the Administrative Procedure Act. Judge Young found that the regulation was not applicable to the VIC concession contracts and, on that ground, declined to pass upon whether the regulation was forbidden by Sec. 353(b). For the purposes of this case, that removed the regulation from further consideration. Now, plaintiff invites us to revisit the issue because on some other day, in some other court, the Secretary's proposed amendment to the regulation (which so far as we know was not before the district court) and which has not and may never be adopted, might be an issue. This we decline to do