**Reinaldo GAUTIER RODRIGUEZ;
Victor Luis Diaz Figueroa,
Plaintiffs,**

v.

**MASON TECHNOLOGIES,
INC., Defendant.**

Civil No. 94–2622 (JAF).

United States District Court,
D. Puerto Rico.

June 20, 1996.

Jesus Hernandez–Sanchez, Ramon M. Gonzalez, San Juan, PR, for Plaintiffs.

Pedro J. Manzano–Yates, Fiddler Gonzalez & Rodriguez, San Juan, PR, for Defendant.

## OPINION AND ORDER

FUSTE, District Judge.

## I.

### Introduction

Plaintiffs, Reinaldo Gautier Rodríguez ("Gautier") and Víctor Luis Díaz Figueroa ("Díaz"), assert several federal and local law claims against defendant Mason Technologies, Inc. Plaintiffs allege (1) that Mason owes them for unpaid overtime pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–19 (1988); (2) that defendant reduced their wages and benefits in violation

of the Service Contract Act (SCA), 41 U.S.C. §§ 351–58 (1988); (3) that defendant violated their right to free association guaranteed by the First Amendment to the United States of America, U.S. Const. amend. I; (4) that defendant unjustly dismissed them from their jobs in violation of Puerto Rico's Unjust Dismissal Act, 29 L.P.R.A. §§ 185a-m (1995), and (5) that defendant discriminated against them in contravention of Puerto Rico's Antidiscrimination Act, 29 L.P.R.A. §§ 146–151 (1995). Defendant has filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56, and plaintiffs have opposed it. Having analyzed the facts and arguments presented by both parties, we **GRANT** movant's motion.

## II.

### *Facts*

Mason Technologies has a contract with the United States Navy to provide maintenance services at the United States Roosevelt Roads Naval Base in Ceiba, Puerto Rico. *See Docket Document No. 3.* Mason Technologies hired Díaz to work within the limits of the United States Naval bases in Ceiba and Vieques, Puerto Rico, St. Thomas, and St. Croix. Díaz was a heavy equipment supervisor in charge of supervising nine employees. As a heavy equipment supervisor, Díaz decided which equipment to use for each job. Employees in the heavy equipment department provided support to ships arriving at the base's pier, such as anchoring stairways, fueling, and providing supplies. Díaz prepared work schedules and assigned specific jobs or orders to his employees. As a supervisor, Díaz was paid bimonthly. His annual salary was approximately $23,000. Díaz worked for Mason Technologies until December 13, 1993. *Docket Document No. 7, Exhibit I.*

Mason Technologies also hired Gautier. Gautier was a heavy equipment mechanics supervisor that supervised eleven employees. Like Díaz, Gautier assigned jobs to his employees. His annual salary, paid bimonthly, was approximately $22,000. *Docket Document No. 7, Exhibit V.*

## III.

### *Summary Judgment Standard*

A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and "genuine", "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of establishing the nonexistence of a "genuine" issue as to a material fact is on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 2556–57, 91 L.Ed.2d 265 (1986). This burden has two components: (1) an initial burden of production, which shifts to the non-moving party if satisfied by the moving party; and, (2) an ultimate burden of persuasion, which always remains on the moving party. *Id.*

Although the ultimate burden of persuasion remains on the moving party, the non-moving party will not defeat a properly supported motion for summary judgment by merely underscoring the "existence of *some* alleged factual dispute between the parties;" the requirement is that there be a *genuine* issue of *material* fact. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510. Likewise, a non-movant will not normally defeat the motion by discrediting testimony presented by movant. *Id.* at 256–57, 106 S.Ct. at 2514–15. Under Rule 56(e) of the Federal Rules of Civil Procedure, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514.

## IV.

### Discussion

#### A. *FLSA Claim*

■ FLSA requires every employer engaged in commerce or in the production of goods for commerce to pay its employees for overtime work at a rate not less than one and one-half times the regular rate at which the employee is employed. 29 U.S.C. § 207 (1988). The Act excludes, however, employees in a *bona fide* executive, administrative, or professional capacity as such terms are defined by the Secretary of Labor. 29 U.S.C. § 213(a) (1988).

■ The Secretary has developed a six-part test to determine whether an employee is exempt as a *bona fide* executive. The employee must meet all six parts of the test to be exempt from the overtime provisions. The Secretary's test is codified at 29 C.F.R. § 541.1 (1993), and provides for the presence of several factors in order for an employee to be considered employed in a *bona fide* executive capacity. However, 29 C.F.R. § 541.1(f) (1993) contains a short test applicable in the executive capacity determination for those nonfederal employees working in Puerto Rico and earning more than $200 per week. *See Donovan v. Burger King Corp.*, 672 F.2d 221 (1st Cir.1982). Plaintiffs admit to having earned approximately $22,000 per year, or roughly $425 per week. Since both plaintiffs earned more than $200 per week, they qualify under the short version of the "executive" exemption if: 1) their "primary duty consists of the management of the enterprise in which [they] are employed or of a customarily recognized department or subdivision," and 2) "such duty includes the customary and regular direction of the work of two or more other employees in the establishment or department." 29 C.F.R. 541.1(f) (1993).

Defendant avers that Díaz was in charge of the Heavy Equipment Operations (HEO) Division, a distinct and permanent division of Mason Technologies. Pursuant to the Secretary of Labor's regulations, a "customarily recognized department or subdivision" is a "unit with permanent status and function." 29 C.F.R. § 541.104 (1993). When Díaz applied for his position at Mason Technologies, his objective was to be General Maintenance Heavy Equipment Supervisor. *Docket Document No. 7, Exhibit II.* He stated that from March 1983 until he started work at Mason Technologies, he worked as Heavy Equipment Maintenance Supervisor. *Id.* In his job application, Díaz stated that he had prior experience as a heavy equipment supervisor, and that he required a salary "same as other supervisor." *Id., Exhibit IV.*

■ In his deposition, Díaz stated that he was a leader of the HEO division. *Docket Document No. 7, Exhibit I.* Whether or not a person is an exempt employee does not depend on the person's job title. When finding a particular kind of work exempt, we must determine whether or not the supervisory employee directs employees' work, plans their work, determines the techniques they use, apportions the work among them, and determines the type of machinery or tools to be used. 29 C.F.R. § 541.102 (1993). During his tenure at Mason Technologies, Díaz supervised nine employees. *Docket Document No. 7, Exhibit 1.* One of them, José Cintrón, was a leader in Vieques, but, nonetheless, reported to Díaz. Díaz admits that he prepared work schedules, that he could change these work schedules when a contingency arose, and that he assigned work to his employees once he received job orders from his supervisor. Though Díaz' supervisor assigned job orders, Díaz had a radio in order to be in constant communication with the job dispatcher in case of any new job coming up. Before his employees began a job, he examined the ship to decide what type of equipment was necessary to complete a specific job order. Although Díaz informed his supervisor, Mr. Lugo, of the equipment he would use for a job, Díaz admits that Mr. Lugo did not know how to operate heavy equipment and that Mr. Lugo basically relied on whatever information Díaz provided. Upon assigning work and deciding which equipment to use, Díaz would assist his employees by, for example, placing a ladder or directing the machine operator who was lifting cargo. *Id.*

Defendants also aver that Gautier was the General Maintenance Mechanic Supervisor in Mason Technologies, another separate and

distinct division of the company. Gautier stated that he supervised eleven employees: Seven mechanics, two electromechanics, and two generator mechanics. *Docket Document No. 7, Exhibit V.* He also supervised two leaders: José M. Rivera and Charlie García. On a typical work day, Gautier would first check with the dispatcher to see whether there were any emergency jobs to perform. Then, he would proceed with his usual workday of assigning mechanics to different jobs. Mechanics had to inform him of the equipment condition in order for him to determine what were the necessary repairs and whether any new parts were necessary. If the company did not have the part in stock, Gautier had to order it. *Id.*

In their opposition, plaintiffs rely on their complaint allegations to counter defendant's statement of uncontroverted facts. Plaintiffs also claim that during their respective depositions, defendant's counsel did not ask them all the germane questions in order for this court to determine whether or not they were exempt employees. We find that plaintiffs' counsel had the opportunity and actually took advantage of the opportunity to ask plaintiffs questions during their depositions. It behooved plaintiffs' counsel to fill any gap in their testimony. Pursuant to Fed.R.Civ.P. 56, plaintiffs could not rest upon the mere allegations or denials of the adverse party's pleadings; they had to set forth specific facts showing that there is a genuine issue for trial. Plaintiffs have utterly failed to meet the rule's requirement having filed an opposition motion unsupported by affidavits or other documents.

 We find that pursuant to the Secretary of Labor's regulations, plaintiffs were *bona fide* executive employees, exempted from the overtime provisions of the FLSA. Being exempted employees, they are not entitled to any overtime pay.

**B.** *Service Contract Act*

Plaintiffs also seek relief under the Service Contract Act of 1965 (SCA), for alleged reduction in wages and benefits. Two circuit courts have spoken about the issue now before us, and have found that there is no private cause of action under SCA that would

confer upon this court jurisdiction over the present matter. The Ninth Circuit has held that the SCA does not confer, either explicitly or implicitly, a private right of action. *See Miscellaneous Serv. Workers, Drivers & Helpers, Teamsters Local #427 v. Philco–Ford,* 661 F.2d 776, 779 (9th Cir.1981). In that case, the court held that employees had no standing to sue their employer for failing to compensate them as the terms of the employer's federal government contract required. *Id.*

The Eleventh Circuit adopted the reasoning and holding of the Ninth Circuit's *Philco–Ford* decision in *District Lodge No. 166, Int'l Ass'n of Machinists & Aerospace Workers, AFL–CIO v. TWA Servs., Inc.,* 731 F.2d 711, 714–16 (11th Cir.1984), *cert. denied,* 469 U.S. 1209, 105 S.Ct. 1175, 84 L.Ed.2d 324 (1985). There, the court held that a union could not maintain a private cause of action under SCA against an employer for wage and fringe benefit differentials. *Id.* at 716.

 In addition, at least two federal district courts have concluded that the Secretary of Labor has exclusive jurisdiction to enforce the SCA through administrative proceedings. *See Oji v. PSC Environmental Management Inc.,* 771 F.Supp. 232 (N.D.Ill. 1991); *Nichols v. Mower's News Serv., Inc.,* 492 F.Supp. 258 (D.Vt.1980). This court agrees with the conclusion of the Ninth and Eleventh Circuits that the SCA neither explicitly nor implicitly authorizes a private cause of action. Additionally, this court agrees with the district courts that the Secretary of Labor, and not private parties, has exclusive jurisdiction to enforce the SCA; therefore, this court has no subject matter jurisdiction to hear plaintiffs' complaint under the SCA and furnish them with some type of relief.

**C.** *First Amendment Claim*

 In their complaint, plaintiffs alleged that they had been persecuted and discriminated against by defendant for being members of the "Asociación Pro Defensa Empleados del Navy," in violation of the First Amendment to the United States Constitution. After filing their complaint, plaintiffs

have not proffered any evidence on which they ground this claim. Bare allegations will not defeat a motion for summary judgment. *See Anderson,* 477 U.S. at 251, 106 S.Ct. at 2511 (mere existence of a scintilla of evidence in support of plaintiffs' claim will be insufficient). Therefore, we dismiss plaintiffs' First Amendment claim.

## V.

### *Conclusion*

Plaintiffs have failed to contest the facts presented by defendant that they were exempted employees under the FLSA overtime provisions. Plaintiffs have also failed to show that Mason Technologies violated their right to free association. Accordingly, we **GRANT** defendant's motion for summary judgment on all federal claims. We **DISMISS** plaintiffs' Puerto Rico law claims without prejudice of litigation in the Commonwealth court system. 28 U.S.C. § 1367 (1990).

**IT IS SO ORDERED.**