**SERVICE EMPLOYEES' INTERNATIONAL UNION, LOCAL UNION NO. 36**

v.

**GENERAL SERVICES ADMINISTRATION and Ken-Rich Services, Inc. t/a Task Force Services Corporation.**

Civ. A. No. 77–920.

United States District Court, E. D. Pennsylvania.

Oct. 31, 1977.

---

2. *But see United States v. Caceres,* 545 F.2d 1182 (9th Cir. 1976), *petition for cert. filed,* No. 76–1309 (3/21/77).

Ira Silverstein, Philadelphia, Pa., for plaintiff.

J. Freedley Hunsicker, Jr., Philadelphia, Pa., for defendant.

## OPINION

DITTER, District Judge.

The issue in this case is whether or not the Service Contract Act of 1965, as amended, 41 U.S.C. § 351 et seq., requires that an employer which has received a government contract to do maintenance work must retain its predecessor's employees and submit disputes to arbitration under the predecessor's collective bargaining agreement. For the reasons which follow, I conclude the Act imposes no such obligations.

## I.   Factual and Procedural Background

This controversy stems from an award by the General Services Administration (GSA) of a one year contract commencing February 1, 1977, to Ken-Rich Services, Inc. (Ken-Rich) for the cleaning of a Philadelphia Social Security building (SSA Building).[1] At a meeting on January 10, 1977, with GSA and Ken-Rich officials, a representative of Prudential Building Maintenance Corporation (Prudential), the contractor Ken-Rich was replacing, stated his belief that Ken-Rich had an obligation to hire the then current Prudential employees. Ken-Rich's stance on this issue was to the contrary and GSA spokesmen confirmed that defendant could hire its own employees so long as the new employees were to be paid at levels established by the Secretary of Labor and set out in the contract.[2] Prudential was informed that its employees would be considered prospective employees and interviewed if a list of their names was provided. Kocher affidavit at paragraph 10.

On January 27, 1977, Ken-Rich hired a full complement of new employees, 40 in all. By letter dated January 28, 1977, there was forwarded to Ken-Rich a petition signed by 24 Prudential employees who desired to continue work at the SSA Building. In response, Ken-Rich stated that hiring had been completed, but eventually 11 former Prudential employees were interviewed and one was engaged as a replacement on an as-needed basis. Kocher affidavit at paragraphs 11–14.

█ Local 36, the union local which represented Prudential's employees, instituted this action on March 14, 1977, seeking an injunction to prevent Ken-Rich's not hiring the former Prudential employees, to keep it from paying wages below those provided in the collective bargaining agreement with Prudential, and to recover lost wages and benefits. Plaintiff has also requested leave to amend its complaint to: 1) compel arbitration under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185,[3] and 2)

---

1. The procedure by which Ken-Rich was awarded the contract is not in question. By solicitation dated June 1, 1976, GSA invited sealed offers for the job. The original June 21, 1976, bid deadline was first extended to August 26, 1976, then to November 26, 1976. Ken-Rich submitted its bid on August 24, 1976. By signed notification dated December 29, 1976, Ken-Rich was informed that GSA had accepted its offer. Defendant then filed a performance bond in the amount of $50,998. See affidavit of Donald F. Kocher at paragraphs 6–9.

2. Defendant double-checked the accuracy of its position through Frank X. Flannery, assistant regional director of the Department of Labor, who agreed with Ken-Rich. Kocher affidavit at paragraph 10.1.

3. This amendment is offered to correct a deficiency in plaintiff's allegation of jurisdiction. The complaint asserts jurisdiction only on the basis of diversity. Since the real thrust of plaintiff's cause of action relates to an alleged violation of the Labor Management Relations Act, see discussion, infra, plaintiff now seeks to advance that statute as an additional basis for jurisdiction. Plaintiff's motion to assert this provision is granted because leave to amend a complaint is to be freely allowed under Federal

add the Secretary of Labor as an additional defendant in order to compel him to enforce the provisions of the Service Contract Act.[4]

Plaintiff's basic theory is that the Service Contract Act obligated Ken-Rich to hire Prudential's former employees. Since Ken-Rich failed to do so, plaintiff asserts it has a labor dispute with Ken-Rich, a dispute which is subject to arbitration under the terms of plaintiff's collective bargaining agreement with Prudential. Ken-Rich refused to arbitrate; therefore, plaintiff seeks to enforce the collective bargaining agreement through § 301 of the Labor Management Relations Act.[5] Ken-Rich denies any responsibility under Prudential's contract and asserts plaintiff has no standing to bring this suit. Both plaintiff and Ken-Rich[6] have moved for summary judgment. Because I find no factually disputed issues which are material,[7] I shall resolve the instant motions solely on questions of law.

II. Existing case law does not require Ken-Rich to comply with its predecessor's collective bargaining agreement

At the outset, it is clear that under the case law interpreting successor[8] relationships prior to the 1972 amendment of the Service Contract Act, Ken-Rich would not be bound by Local 36's collective bargaining agreement with Prudential. *Boeing v. International Association of Machinists & Aerospace Workers, AFL–CIO,* 504 F.2d 307 (5th Cir. 1974), the only case plaintiff has cited which deals with the particular issue involved here, states that a successor employer's obligation depends on an analysis of the reference points established in three Supreme Court cases: *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *NLRB v. Burns Int. Security Service, Inc.,* 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972); and *Howard Johnson Co. v. Detroit Local Joint Exec. Bd.,* 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974).

In *Wiley,* the Court held that where a predecessor company has disappeared as a result of a merger, the successor employer will be bound to arbitrate under an existing collective bargaining agreement in those cases where there is a "substantial continuity of identity in the business enterprise before and after a change." 376 U.S. at 551, 84 S.Ct. at 915. The Court in *Burns* held that a successor employer, which had hired a majority of its predecessor's work force and preserved substantially intact its predecessor's operational structures and

---

Rule of Civil Procedure 15(a) and because the arguments raised by Ken-Rich apply with equal force to the amended complaint.

**4.** This act was passed to provide labor standards to protect employees of contractors who perform maintenance services for federal agencies. It requires that a government service contractor pay its employees no less than prevailing wage and benefit rates for such employees in the locality as determined by the Secretary of Labor. See *Masters v. Maryland Management Co.,* 493 F.2d 1329, 1332 (4th Cir. 1974). Local 36 lacks standing to sue under the Act, however, since its enforcement is a function granted only to the Secretary of Labor. See 41 U.S.C. § 351(a).

**5.** 29 U.S.C. § 185, which was enacted to encourage collective bargaining and other administrative techniques for the peaceful resolution of industrial disputes. *United Steelworkers of America, AFL–CIO–CLC v. NLRB,* 530 F.2d 266, 275 (3d Cir. 1976). It authorizes suits by either party in the federal courts to enforce collective bargaining agreements.

**6.** To date, GSA has not filed any response to the complaint.

**7.** Plaintiff has raised one factual issue, i. e., that defendant is paying its new employees at a rate significantly lower than the rate specified in the GSA contract, but this matter is not material to the resolution of the summary judgment motions. See part IV, infra.

**8.** "Successor employer" and "predecessor employer" are not terms of art. "There is, and can be, no single definition of 'successor' which is applicable in every legal context. A new employer, in other words, may be a successor for some purposes and not for others." *Howard Johnson Co. v. Detroit Local Joint Exec. Bd.,* 417 U.S. 249, 262 n. 9, 94 S.Ct. 2236, 2243, 41 L.Ed.2d 46 (1974).

practices, would have to recognize a union previously certified as the employees' bargaining unit.[9] However, the Court went on to hold the successor employer was not bound by the contract between the union and the predecessor employer. The source of the duty to bargain was not the agreement but the fact that the successor voluntarily took over a bargaining unit that was largely intact and recently certified. In *Howard Johnson*, of the successor's 45 employees, only 9 had worked for the predecessor. The Court rejected the union's argument that the successor was in any way obligated under the predecessor's bargaining agreement.

Here, even if it would be determined that Prudential's structure and practices remained substantially intact, the presence of one former Prudential employee as an "as-needed" replacement in Ken-Rich's employ hardly can be said to keep the bargaining unit unchanged or maintain a continuity of identity in the business enterprise. It is evident, therefore, that so far as the teachings set forth in *Wiley, Burns*, or *Howard Johnson* are concerned, Ken-Rich has no obligation to hire or arbitrate under the terms of Local 36's contract with Prudential.

III. The 1972 Amendments to the Service Contract Act do not require Ken-Rich to comply with its predecessor's collective bargaining agreement

■ While recognizing that it would normally be foreclosed by this Supreme Court trilogy, plaintiff argues that the 1972 amendments to the Service Contract Act, specifically, 41 U.S.C. § 353(c), alter the application of successorship law in the instant matter to require Ken-Rich to arbitrate or hire Local 36 members. The union points to dicta present in *Boeing* and the legislative history and language of the amendments themselves to support its position. I can not agree.

Section 353(c) imposes upon a successor employer the duty to pay the wages and fringe benefits agreed to in a predecessor's collective bargaining agreement.[10] There is no language in the Act which explicitly creates the affirmative duties which plaintiff seeks to impose on Ken-Rich, i. e., retain Local 36's members and arbitrate. The union asserts that such duties should be read into the section since the legislative history shows that Congress intended not only to protect wage and benefit levels but also to guarantee service employees' continuity of employment. Although plaintiff cites some broad statements in the history of the legislation which could, arguably, support its position.[11] I find that the legis-

9. When Burns, the successor, began its service, it employed 42 workers, 27 of whom had worked for the former employer. Under these circumstances, the Court concluded:

> . . . it was not unreasonable for the Board to conclude that the union certified to represent all employees in the unit still represented a majority of the employees and that Burns could not reasonably have entertained a good faith doubt about that fact. 406 U.S. at 278, 92 S.Ct. at 1577.

Subsequent cases have questioned whether a successor must hire a strict majority of the predecessor's employees to meet this test or whether a "substantial number" will be sufficient. *Dynamic Machine Co. v. NLRB*, 552 F.2d 1195, 1203 n. 9 (7th Cir.), cert. denied, —— U.S. ——, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977); *Spruce Up Corp.*, 209 NLRB No. 19, 85 LRRM 1426 (1974); *Boeing Co.*, supra, 504 F.2d at 317–18, 320–21.

10. No contractor or subcontractor under a contract, which succeeds a contract subject to this chapter and under which substantially the same services are furnished, shall pay any ser-

vice employee under such contract less than the wages and fringe benefits, including accrued wages and fringe benefits, and any prospective increase in wages and fringe benefits provided for in a collective-bargaining agreement as a result of arm's-length negotiations, to which such service employees would have been entitled if they were employed under the predecessor contract: *Provided*, That in any of the foregoing circumstances such obligations shall not apply if the Secretary finds after a hearing in accordance with regulations adopted by the Secretary that such wages and fringe benefits are substantially at variance with those which prevail for services of a character similar in the locality. 41 U.S.C. § 353(c).

11. Ordinarily, where service employees are covered by a collective bargaining agreement, a successor contractor furnishing substantially the same services at the same location will be obligated to pay to such service employees no less than wages and fringe benefits required by such agreement. . . .

The term 'accrued . . . fringe benefits' is interpreted to mean those benefits, such as

lative history leads to the opposite conclusion: the Service Contract Act was designed to protect only wage and benefit levels.

The Senate Report on the 1972 amendments states:

> The Service Contract Act was enacted to provide wage and safety protection for employees working under Government service contracts. It makes the Department of Labor responsible for assuring that service employees are paid at least the prevailing wages and fringe benefits for the same work in their locality as others are paid, so that his [sic] is simply a wage standards protection statute.
>
> The purpose of this bill is to bring about more equitable and more efficient administration of the Service Contract Act of 1965. 1972 U.S.Code Cong. & Admin.News p. 3534.

In explaining the provisions of § 353(c) the Senate Report continued:

[353(c)] deals with contracts, under which substantially the same services are furnished, which succeed contracts subject to the Service Contract Act. Contractors or subcontractors under such contracts must pay service employees at least the wages and fringe benefits . . . to which the service employees *would have been entitled had they been employed under the predecessor contract* . . . (emphasis added). *Id.* at 3536.

The phrase emphasized above clearly shows Congress anticipated that successor contractors would not always retain the employees of their predecessors. The purpose of § 353(c) was to guarantee a wage base for employees which all contractors would have to honor, not to guarantee continuation of the employment of service workers.[12]

This conclusion is reinforced by the statements of Representative Frank Thompson, Jr., chairman of the House subcommittee which held hearings on the bill, outlining the inequities which were to be remedied by the committee's proposed amendments.[13]

accrued vacation pay or sick leave, *to which an employee has become entitled by virtue of employment on predecessor contracts.* (emphasis added). S.Rep. No. 92–1131, 92d Cong., 2d Sess. ——, 1972 U.S.Code Cong. and Admin. News pp. 3534, 3537. See also the statement of Senator Edward J. Gurney:

"[A] cloud of professional and economic uncertainty hovers over the heads of one million service contract workers fulfilling 25 thousand service contracts . . . . [R]egardless of how loyal or how hard working or how skilled an employee is, regardless of how long he has been working under one of these service contracts, he faces the possibility every year or so, that a new company will come in and successfully underbid his employer. When this happens, he finds himself possibly out of work, definitely reduced in income, fringe benefits, seniority and stripped of pension rights.
. . . This legislation confronted the Congress with the decision as to whether or not it is moral to trade men's wages and careers for the sake of expediency. And Congress has today decided in the negative." 118 Cong.Rec. 31281–31282 (1972).

**12.** In floor debate Representative Ben B. Blackburn advanced this argument in opposition to the bill:

"[Section 353(c)] provides that, in the case of successor contracts under which substantially the same services are furnished, the minimum wage rates and fringe benefits to be paid by the successor contractor may not be less than those paid under the predecessor contract . . . . This is so even if the successor contractor employs his own work force and does not retain any of the predecessor contractor's employees." 118 Cong. Rec. 27139 (1972).

It seems unlikely that a member of the House could be so misinformed as to the purpose of the act and, even if he was, that he would not be corrected on the floor if the plaintiff's interpretation of the legislative history and intent is correct. No correction of this type was made.

**13.** "There were five serious problems which became apparent during the course of the hearings.

First. The Department has failed to make wage and fringe benefit determinations for almost two-thirds of the contracts subject to the act;

Second. A substantial disparity in wages and fringe benefits has developed between Federal wage board employees and their counterparts employed by service contractors;

Third. A great deal of labor-management instability has arisen because of a failure to take the existence of collective-bargaining agreements into account in the wage and fringe benefit determination process;

Fourth. A section of the act giving the Secretary of Labor discretion in administering the act has been stretched far beyond what the Congress had intended;

His explanations show Congress enacted § 353(c) to insure that the Secretary of Labor would take into account existing collective bargaining agreements in determining prevailing wages, thus putting an end to competitive bidding at the expense of employee salaries. While this amendment modified existing successorship law, it did so only to the extent that a successor employer is required to adopt the wage and benefit levels of his predecessor's collective bargaining agreement.[14] See *Kentron Hawaii, Limited v. Warner*, 156 U.S.App.D.C. 274, 281 n. 19, 480 F.2d 1166, 1173 n. 19 (1973).

Since § 353(c) does not impose either the duty to arbitrate or to retain employees of the predecessor and since the legislative history will not allow such an inference to be read into the statute, resolution of this case must be based on existing case law under the Labor Management Relations Act. *Boeing* and the Supreme Court trilogy are controlling and Ken-Rich must be granted summary judgment[15] and plaintiff's cross-motion must be denied.[16]

IV. Plaintiff may not amend its complaint to add the Secretary of Labor

 The Secretary of Labor is authorized to enforce the provisions of the Service Contract Act, see note 4, supra; therefore, Local 36 also seeks to add the Secretary as a defendant in order to compel him to use the Act against Ken-Rich. This cannot be allowed for two reasons.

First, insofar as plaintiff's claim for damages and injunctive relief is concerned, the Act simply does not provide for such a remedy. *International Assoc. of Mach. & Aero Wkrs. v. Hodgson*, 169 U.S.App.D.C. 142, 148, 515 F.2d 373, 379 (1975). Nor, in light of my ruling in this case, could the Secretary enforce the provisions of § 301 of the Labor Management Relations Act against Ken-Rich.

Second, with regard to the union's assertion that Ken-Rich is paying wages less than those required by the Act, see note 7, supra, Local 36 lacks the standing to argue noncompliance with the prevailing rates or to demand the Secretary order such compliance. Local 36 does not represent Ken-Rich employees and, thus, neither it nor its members are being injured. Even if it is being injured in some abstract way, its injury is not "arguably within the zone of interests to be protected or regulated by the statute . . . in question." *Data Processing Service v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970).

It follows that leave to add the Secretary as an additional defendant must be denied.

Fifth. The practice of rebidding contracts yearly either without wage and fringe determinations or with unrealistically low determinations is creating chaos for reputable contractors and great hardship for employees." 118 Cong.Rec. 27136 (1972).

14. Plaintiff's reliance upon the *Boeing* dicta is misplaced. The court merely remarked:

Had 41 U.S.C. § 353(c) been in effect at the time when the events giving rise to this controversy occurred, this matter would have been much simpler of resolution. That section provides in effect that a government service contractor, such as Boeing, which succeeds to a contract under which it furnishes substantially the same services as its predecessor, shall not pay its employees less than its predecessor paid under its collective bargaining agreement, unless such terms are found by the Secretary of Labor to be sub-

stantially at variance with the going rate in the locality (footnote omitted). *Boeing*, supra, 504 F.2d at 311–12.

While I have the greatest respect for the Fifth Circuit Court of Appeals, I find its comment of little use here because there is no indication how resolution of *Boeing* would have been simplified by § 353(c).

15. In light of this grant of summary judgment, I need not consider defendants' other contention, i. e., that plaintiff's claim for injunctive relief in labor disputes is barred by the Norris-LaGuardia Act, 29 U.S.C. § 101 et seq.

16. Plaintiff's motion for summary judgment is not directed at GSA, so that the issues existing between the union and GSA are not decided here.