**In re FRANK MOSSA TRUCKING, INC., Debtor.**

**Bankruptcy No. 4–80–00527–G.**

United States Bankruptcy Court,
D. Massachusetts.

Nov. 27, 1985.

Alfred J. Doyle, Jr., Worcester, Mass., for debtor.

Richard P. Salem, Leicester, Mass., trustee.

MEMORANDUM RE: TRUSTEE'S OBJECTIONS TO THE APPLICATION FOR ORDER APPROVING DISTRIBUTION OF WITHHELD FUNDS TO EMPLOYEES AND THE MEMORANDUM AND PROPOSED ORDER FILED BY THE SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR

PAUL W. GLENNON, Bankruptcy Judge.

This matter comes before the Court because the United States Department of Labor is seeking authorization to distribute sums withheld from Frank A. Mossa, individually, pursuant to section 3(a) of the Service Contract Act of 1965, 41 U.S.C. §§ 351–358 (1982) (the "Act"). The trustee, Richard P. Salem, Esquire (the "Trustee"), objects to distribution of at least some of the amounts withheld.

## PROCEDURAL BACKGROUND

Frank A. Mossa, d/b/a Frank A. Mossa Trucking ("Mossa"), entered into three mail hauling contracts with the United States Postal Service (USPS), which contracts are identified as 1) Run # 02011—Solicitation # 021–35–79; 2) Run # 01511—Solicitation # 021–60–79; and 3) Run # 01514—Solicitation # 021–105–B–79. Prior to August 15, 1980, when Frank Mossa Trucking, Inc. (the "Debtor"), a corporation formed by Mossa on September 25, 1979, filed a voluntary petition in bankruptcy under Chapter 11 of the Bankruptcy Code, Mossa and/or the corporation—Mossa was a one hundred percent stockholder—were the subject of an investigation by the Wage and Hour and Public Contracts Division of the United States Department of Labor for alleged violations of the Service Contract Act of 1965.

The investigation disclosed that Mossa had failed to pay his employees covered by the Act the wages and fringe benefits required in contracts with the USPS in violation of those contracts and section 2(a)(2) of the Act.[1] By letter dated July 11, 1980 and pursuant to section 3(a) of the Act,[2] the Assistant Regional Administrator of the Wage and Hour Division directed USPS officials to withhold $43,000 on the aforementioned contracts until the violations were resolved.

The USPS honored the request and withheld payments due Mossa on August 6, 1980 ($11,224.80); on October 20, 1980

---

1. Section 2(a)(2) provides:

A provision specifying the fringe benefits to be furnished the various classes of service employees, engaged in the performance of the contract or any subcontract thereunder, as determined by the Secretary or his authorized representative to be prevailing for such employees in the locality, or, where a collective bargaining agreement covers any such service employees, to be provided for in such agreement, including prospective fringe benefit increases provided for in such agreement as a result of arm's-length negotiations. Such fringe benefits shall include medical or hospital care, pensions on retirement or death, compensation for injuries or illness resulting from occupational activity, or insurance to provide any of the foregoing, unemployment benefits, life insurance, disability and sickness insurance, accident insurance, vacation and holiday pay, costs of apprenticeship or other similar programs and other bona fide fringe benefits not otherwise required by Federal, State, or local law to be provided by the contractor or subcontractor. The obligation under this subparagraph may be discharged by furnishing any equivalent combinations of fringe benefits or by making equivalent or differential payments in cash under rules and regulations established by the Secretary. 41 U.S.C. § 351(a)(2).

2. Section 3(a) provides:

*Any violation of any of the contract stipulations required by section 2(a)(1) or (2) or of section 2(b) of this Act shall render the party responsible therefor liable* for a sum equal to the amount of any deductions, rebates, refunds, or underpayment of compensation due to any employee engaged in the performance of such contract. So much of the accrued payment due on the contract or any other contract between the same contractor and the Federal Government may be withheld as is necessary to pay such employees. *Such withheld sums shall be held in a deposit fund.* On order of the Secretary, any compensation which the head of the Federal agency or the Secretary has found to be due pursuant to this Act shall be paid directly to the underpaid employees from any accrued payments withheld under this Act. 41 U.S.C. § 352(a) (emphasis supplied).

($5,357.36) and in February, 1981 ($9,453.37). Money was withheld on two of the three contracts which ran to Mossa personally, since Mossa was doing business as Frank A. Mossa Trucking, an unincorporated business, at the time the contracts were executed. The two contracts were numbered 01511 and 02011. The first was executed in full on June 21–22, 1979, and the second was executed in full on June 28, 1979.

On October 25, 1982, the Department of Labor filed an application with this Court for an order approving the distribution of $26,035.53 in withheld funds to employees. In its application, the Department of Labor erroneously assumed the Debtor, not Mossa individually, had violated section 2(a)(2) of the Act. Nevertheless, the Department argued that the withheld funds were not property of the bankrupt's estate within the meaning of 11 U.S.C. § 541. According to the Department, under the terms of the contract between the contractor (Mossa) and the USPS the contractor had no entitlement to the withheld funds if it failed to pay wages in accordance with the terms of the contracts. Furthermore, the Department argued that the withholding provisions of the Act effectively establish a trust fund for the contractor's employees, which fund is not the property of the bankruptcy estate.

On December 8, 1982, the Trustee filed an objection to the Application of the Department of Labor. The Trustee asserted:

1. In so far as the funds in question are proposed to be distributed in satisfaction of claims against the debtor said fund should be turned over to the Trustee to be administered and distributed in accordance with the U.S.Bankruptcy Code.

2. To the extent the Department of Labor's efforts entail the enforcement of claims held by employees of the debtor said efforts were stayed by 11 U.S.C. § 362(a)(6).

3. To the extent the Department of Labor levied on funds after August 15, 1980, the date of debtor's petition in bankruptcy, to enforce claims of the employees of the debtor said levy was in violation of 11 U.S.C. § 541.

4. The United States Bankruptcy Code is the will of the U.S. Congress concerning the equitable distribution of assets in the case of a bankrupt debtor and therefore should control to the extent there may be any conflict with provisions of the Service Contract Act of 1965, 41 U.S.C. § 351 et seq., concerning payments to creditors of the debtor.

The next day, the Department of Labor, having discovered that the contracts from which the funds were withheld belonged to Frank A. Mossa personally and not Frank Mossa Trucking, Inc., wrote to the Court in an attempt to withdraw its October 20, 1982 letter requesting an order approving the distribution of $26,035.53, which letter was docketed on October 25, 1982. The Department reviewed the events leading up to October 25th and attached appropriate documentation to its letter. In addition, the Department advised the Court that Mossa had no ability to assign contracts 01511 and 02011 to the Debtor, Frank Mossa Trucking, Inc. According to the Department, unauthorized assignments were explicitly forbidden by the terms of the USPS contracts and were grounds for contract termination. Thus, even if the corporation assumed Mossa's mail hauling contracts in violation of the express terms of the contract, no privity of contract between the USPS and the corporation was created, and the USPS was not obligated to the corporation in any way.

Furthermore, the Department argued that the Act's requirement that employees be paid in accordance with the Act's wage provisions was not obviated by the fact that employees of the Debtor performed the contracts that ran to Mossa personally since section 3(a) of the Act places liability on "the party responsible" for violations. Finally, the Department informed the Court that former employees of the Debtor have no standing to initiate private causes of action since enforcement of the Act is under the sole authority of the Secretary of Labor.

On December 10, 1982, the Court conducted a hearing on the Department's request and the Trustee's objection. At the hearing, the Department of Labor reiterated the position it set forth in the December 9, 1982 letter. The Trustee argued that the automatic stay provisions of section 362 of the Bankruptcy Code were violated by the actions of the Department of Labor and the USPS in withholding sums after the Debtor filed its bankruptcy petition on August 15, 1980, which sums total $14,810.73. The Trustee repeatedly asserted that the Department was attempting to enforce pre-petition employee wage claims against the Debtor, when in his words, "perhaps these funds should be used to pay post-petition administration expenses...."

At the Court's direction, the Department of Labor submitted a memorandum and proposed order relative to the points discussed at the hearing. The Trustee filed an objection thereto on January 10, 1983. Another hearing was had on January 28, 1983. The Department of Labor thereafter responded to the Trustee's objection on February 7, 1983. It filed a supplemental memorandum in support of its memorandum and proposed order on March 9, 1983. Finally, on September 26, 1983, it moved this Court for a decision.

## DISCUSSION

The issues before the Court are 1) whether the amount of money withheld from contracts running to Frank A. Mossa personally after August 15, 1980, the date on which Frank Mossa Trucking, Inc. filed its petition in bankruptcy, is property of the estate; and 2) whether the Department of Labor and the USPS violated the automatic stay provisions of section 362 by withholding monies to pay ostensible pre-petition wage claims of the Debtor's employees.

■ The Court finds that the funds withheld from the USPS mail hauling contracts are neither property of the estate nor property of Frank A. Mossa personally. The withholding provisions of the Act established a trust fund for the benefit of employees. The legislative history[3] and case law clearly support this proposition. *See In re Security Unlimited Enterprises, Inc.*, 96 Lab Cas. (CCH) ¶ 34,316 (Bankr.N. D.Ill.1982) ("[W]ithheld monies under the SCA [Service Contract Act] are not the property of the estate of the debtor for the purposes of the BRA [Bankruptcy Reform Act]".). *Cf. Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1972); *Matter of Cascade Reforestation, Inc.*, 56 Comp.Gen. 499 (1977); *Matter of Richard T. D'Abrosia d/b/a Ambrosia Construction Co.*, 55 Comp. Gen. 774 (1976).

For example, in *Pearlman,* a surety on a payment bond given by a contractor under the Miller Act was compelled to pay debts of the contractor for labor and materials as

---

**3.** The Historical and Revision notes following 11 U.S.C. § 541 (1982) contain the following from the Legislative Statements and Senate Report No. 95–989, U.S.Code Cong. & Admin.News 1978, p. 5787, 5868:

Property of the estate: The Senate amendment provided that property of the estate does not include amounts held by the debtor as trustee and any taxes withheld or collected from others before the commencement of the case. The House amendment removes these two provisions. As to property held by the debtor as a trustee, the House amendment provides that property of the estate will include whatever interest the debtor held in the property at the commencement of the case. Thus, where the debtor held only legal title to the property and the beneficial interest in the property belongs to another, such as exists in the case of property held in trust, the property of the estate includes

the legal title, but not the beneficial interest in the property.

\*　\*　\*　\*　\*　\*

Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in a constructive trust for the person to whom the bill was owed. This section and proposed 11 U.S.C. 545 also will not affect various statutory provisions that give a creditor of the debtor a lien that is valid outside as well as inside bankruptcy, or that creates a trust fund for the benefit of a creditor of the debtor. See Packers and Stockyards Act § 206, 7 U.S.C. 196.

a result of a contractor's default. The Supreme Court held that the surety was entitled by subrogation to reimbursement from a fund otherwise due to the contractor but withheld by the government pursuant to the retainage provisions of the contract with the contractor. The Court so held despite the fact that the contractor had filed a petition in bankruptcy and the government had turned over the withheld funds to the bankruptcy trustee. Additionally, the Court ruled the fund never became a part of the bankruptcy estate and, therefore, its diposition was not controlled by the Bankruptcy Act.

As a consequence of this Court's conclusion that the monies withheld are not property of the estate, the automatic stay provisions are inapplicable. The Trustee's argument that the Department of Labor is enforcing wage claims of corporate employees misperceives the purpose and mode of enforcement of the Act. The purpose of the Act is to compel contractors to pay employees working on federal service contracts in accordance with prevailing rates and benefits. *Berry v. Andrews*, 535 F.Supp. 1317 (M.D.Ala.1982). Aggrieved employees have no standing to initiate claims against the Debtor and courts lack subject matter jurisdiction to hear private parties' claims under the Act. *Nichols v. Mower's News Service, Inc.*, 492 F.Supp. 258 (D.C.Vt.1980); *Service Employees' International Union v. General Services Administration*, 443 F.Supp. 575 (D.C.Pa. 1977).

Furthermore, "the party responsible" is liable for violations of the Act. The party responsible includes one who directs and controls employment practices and management policies and who by either action or inaction causes or permits the contract and the Act to be breached. *U.S. v. Sancolmar Industries, Inc.*, 347 F.Supp. 404, 408 (E.D. N.Y.1972). There can be no dispute that Frank A. Mossa was the party responsible for violations of the Act both before and after the incorporation of the Debtor. USPS records show no transfers or assignments of the mail hauling contracts from Mossa to the Debtor, and, in any event, a successor corporation to an individual proprietorship does not become a party to a contract previously agreed to by the proprietorship unless there is evidence of assignment. *Cf. Marine Mart, Inc. v. Lavargna*, 27 Mass.App.Dec. 93 (1963). Since Mossa was sole shareholder and president of the Frank Mossa Trucking, Inc., he continued to be the party responsible. He, therefore, is personally liable for the wages due employees. Thus, even if the Court held that the withholding by USPS at the direction of the Department of Labor was to enforce employees' claims, the withholding was against Mossa personally and not a levy against the Debtor in violation of the automatic stay.

In accordance with the foregoing, and the entire record of this case, the Court hereby authorizes the Secretary of Labor to distribute the withheld sums to former employees of Mossa or the Debtor.

SO ORDERED.