In re CAREER CONSULTANTS, INC., t/a Honor Guard Security Services, Debtor.

William E. BROCK, Secretary of Labor,

and

United States Department of Labor, Plaintiffs,

v.

CAREER CONSULTANTS, INC.,

and

Gerald M. O'Donnell, Trustee, Defendants.

Bankruptcy No. 85–00406–A.
Adv. No. 85–0248–A.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

March 17, 1988.

---

**420**

Roy B. Zimmerman, Alexandria, Va., for debtor.

Gerald M. O'Donnell, Alexandria, Va., trustee.

S. David Schiller, Asst. U.S. Atty., Richmond, Va., and Catherine O. Murphy, U.S. Dept. of Labor, Office of Regional Solicitor, Philadelphia, Pa., for plaintiffs.

Diane O. Ceresi, Thomas J. Hart, Thomas Hart & Associates, Washington, D.C., and David Hilton, Fairfax, Va., for Union, movant/plaintiff-intervenor.

Duane D. Morse, Wilmer, Cutler & Pickering, Washington, D.C., for Perpetual F.S.B., movant/defendant-intervenor.

## MEMORANDUM OPINION

MARVIN V.B. BOSTETTER, Jr., Chief Judge.

This Adversary Proceeding comes before the Court upon the complaint of William E. Brock, Secretary of Labor ("Secretary") for a declaratory judgment that the actions against debtor Career Consultants, Inc. ("CCI") contemplated by the Department of Labor under the Service Contract Act, 41 U.S.C. §§ 351 *et seq.*, the Contract Work Hours and Safety Standards Act, 40 U.S.C. §§ 327 *et seq.*, and the contracts under which the United States government agencies employed Honor Guard Security Services ("Honor Guard"), a subsidiary of CCI, are not stayed by section 362(a) of the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101–151326 ("Code"). The Secretary asserts that the proceedings to deny CCI the award of any contract with the United States government and to determine and pay the sums due employees paid neither the correct regular and overtime wages nor fringe benefits fall within the exception to the automatic stay found in section 362(b)(4):

> (b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), does not operate as a stay—
>
> (4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power[.]

11 U.S.C. § 362(b)(4).

In the alternative, the United Union of Security Guards, the Security Workers Health and Welfare Fund, and the Security Workers Severance and Retirement Fund ("Union"), which has moved to join as a party plaintiff and represents the Honor Guard workers not properly paid by CCI, argues that relief from the automatic stay is appropriate.[1] Noting the extensive authority vested in the Secretary to "enforce the [Service Contract] Act, make rules, regulations, issue orders, hold hearings, make

---

**1.** Although the Union moved to join as a party plaintiff, no order allowing joinder has been presented for entry. The pleadings and memoranda of the Union have been considered, however. Additionally, Perpetual F.S.B. moved to intervene as a party defendant, however Perpetual did not seek a hearing on this motion and no order has been entered granting intervention. Perpetual did not file a memorandum on the relief from stay issue.

decisions based upon findings of fact, and take other appropriate action", the Union urges that this Court defer to the expertise of the Secretary in determining the existence and extent of violations of the Service Contract Act.

In addition, the Secretary seeks a declaratory judgment that funds due CCI under government contracts employing Honor Guard, which are presently withheld by the employing government agencies at the direction of the Department of Labor, are not part of the debtor's bankruptcy estate. Upon violation of the contract stipulations found in both the Service Contract Act and the Contract Work Hours and Safety Standards Act, the Secretary may withhold from the breaching contractor accrued payments due on the contract breached, and on any other contract with the federal government in an amount sufficient to pay employees at contract standard. Sums due CCI on various government contracts have been withheld in the aggregate amount of $532,218.00.

The Secretary argues that these amounts are not "due" under the contracts until CCI is in full compliance with the terms of the contracts. Because the debtor has failed to comply with its contractual, as well as statutory, obligation to pay proper wages and fringe benefits, he argues that the corporation has no entitlement to these funds. Consequently, the contract payments are not part of the bankruptcy estate. The Secretary concludes from these facts that his direction to withhold contract payments is beyond the reach of the automatic stay.

Initially, the trustee relied upon *In re Organized Maintenance*, 47 B.R. 791 (Bankr.E.D.N.Y.1985) to support his position that the Secretary's actions are stayed. The order in *Organized Maintenance*, however, was subsequently vacated as moot by the District Court, which declared the Bankruptcy Court's opinion to be "of no precedential value". *See* 69 B.R. 298, 299 (E.D.N.Y.1987). Nevertheless, this Court is not bound by the superfluous comment "of no precedential value". Because the trustee in the case at bar cited no other authority in support of his position that funds withheld pursuant to the Service Contract Act were sums due the debtor's bankruptcy estate, withheld in violation of the automatic stay, the Court set this adversary proceeding for a status hearing. At this hearing, the trustee maintained that the underlying rationale of *Organized Maintenance* was still valid and persuasive notwithstanding the subsequent history of the case. Following this hearing, the Court took the matter under advisement. For the reasons set forth below, this Court holds that the Secretary's action is not subject to the automatic stay.

Although several bankruptcy courts have held that actions under certain labor regulatory laws fall outside the scope of the automatic stay[2], the *Organized Maintenance* court came to a contrary conclusion, finding that an enforcement action under the Service Contract Act was not an exercise of police or regulatory power within the meaning of section 362(b)(4). 47 B.R. at 796. *Organized Maintenance* reached its conclusion by applying the so-called "pecuniary purpose" test. 47 B.R. at 795.

**2.** The Secretary cites several cases in which bankruptcy courts have held that actions under certain labor regulatory laws fall outside the scope of the automatic stay. *See, e.g., In re Quinta Contractors,* 34 B.R. 129 (Bankr.M.D.Pa. 1983) (considering enforcement proceedings under the Davis–Bacon Act, 40 U.S.C. §§ 276a *et seq.*). In *In re LaPorta,* 26 B.R. 687 (Bankr.N.D. Ill.1982), the United States Bankruptcy Court for the Northern District of Illinois considered the request of the Secretary of Labor for permission to initiate administrative proceedings "to determine the liability of the debtor [under the Service Contract Act] and the rightful ownership of funds being held by [the Secretary]." 26 B.R. at 690. The court stated:

It is manifest that the enforcement of the Service Contract Act which provides for minimum wages and benefits for employees of government contractors is a proceeding akin to an action to protect the public health, safety and the like. The government in such proceeding is not seeking to protect a pecuniary interest it may have in property of the debtor. Instead, the government is proceeding to preserve and protect the rights of employees of a government contractor, a valid public interest contemplated by § 362(b)(4). *Id.* at 691. Accordingly, the court allowed the Secretary to proceed in an administrative forum.

This test is derived from the legislative history to § 362(b)(4) and is further elaborated in a line of cases that appears to begin with *State of Missouri v. United States Bankruptcy Court for the Eastern District of Missouri*, 647 F.2d 768 (8th Cir.1981), *cert. denied*, 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982). The holding in *Organized Maintenance*, however, is problematic.

The enforcement of various statutes has often been held subject to the automatic stay because the statutes in question, "although regulatory in nature, *primarily* relate to the protection of the pecuniary interest in the debtor's property and not to matters of public safety and health." *State of Missouri* at 776 (emphasis added). *See also, Donovan v. TMC Industries Ltd.*, 20 B.R. 997, 1003 (Bankr.N.D.Ga.1982). The overwhelming majority of these cases, however, involve state statutes. *See, e.g., In re Cash Currency Exchange, Inc.*, 762 F.2d 542 (7th Cir.1985) (liquidation proceeding under *state* currency laws stayed); *State of Missouri, supra* (*state* insolvency proceedings stayed); *In re Geffken*, 43 B.R. 697 (Bankr.N.D.Ohio 1984) (action under *state* workman's compensation law stayed); *In re Charter First Mortgage, Inc.*, 42 B.R. 380 (Bankr.D.Or.1984) (action for restitution under *state* consumer protection statute); *In re First Federal Corp.*, 42 B.R. 682 (W.D.Va.1984) (*state* action by the Virginia Real Estate Commission); *In re Rath Packing Co.*, 35 B.R. 615 (Bankr. W.D.Iowa 1983) (enforcement of *state* workman's compensation law); *In re Greenwald*, 34 B.R. 954 (Bankr.S.D.N.Y. 1983) (*state* health commissioner's action to recover overpayments); *In re Sampson*, 17 B.R. 528 (Bankr.D.Conn.1982) (action to enforce *state's* financial responsibility law); *In re Pizza of Hawaii, Inc.*, 12 B.R. 796 (Bankr.D.Haw.1981) (*state* statute involving taxes and issuance of liquor license); *In re Joe Delisi Fruit Co.*, 11 B.R. 694 (Bankr.D.Minn.1981) (*state* allocation among creditors of letter of credit posted by debtor pre-bankruptcy). Thus, these cases all involve state statutes whose primary effect (regardless of their primary purpose) conflicts with the policy and provisions of the Bankruptcy Code and, therefore, are superceded because of federal supremacy. *See, e.g., State of Missouri*, 647 F.2d 768, 773 n. 10. No case that applies the pecuniary purpose test to a state statute discusses the relationship between enforcement of *federal* statutes and the "police or regulatory power" exception of § 362(b)(4). Because of federal pre-emption, the cases involving state statutes can be accorded but little weight.

The "pecuniary purpose" test has been applied to cases involving federal statutes but with far different results from the state cases. Numerous courts have excepted National Labor Relations Board ("NLRB") unfair labor practice proceedings from the automatic stay. *See, e.g., N.L.R.B. v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 941 (6th Cir.1986); *Ahrens Aircraft, Inc. v. N.L.R.B.*, 703 F.2d 23, 24 (1st Cir.1983); *N.L.R.B. v. Evans Plumbing Co.*, 639 F.2d 291, 293 (5th Cir. 1981); *In re Shippers Interstate Service, Inc.*, 618 F.2d 9, 11–13 (7th Cir.1980); *In re Bel Air Chateau Hospital*, 611 F.2d 1248, 1250–51 (9th Cir.1979) (the latter two cases decided under the Bankruptcy Act); *In re Rath Packing Co.*, 38 B.R. 552 (Bankr.N.D. Iowa 1984); *In re Powell*, 27 B.R. 146 (Bankr.W.D.Mo.1983). Only one bankruptcy case has stayed NLRB proceedings: *In re Theobald Industries*, 16 B.R. 537, 539–40 (Bankr.D.N.J.1981). Although the *Theobald* court extensively discussed *State of Missouri* and the "pecuniary purpose" test, it enjoined the NLRB proceedings based on the injunctive power of 11 U.S.C. § 105, rather than § 362, "[n]otwithstanding this inclination to the rationale" of *State of Missouri*. *Id*. at 540. Furthermore, the same judge who decided *Theobald* later explicitly ruled that NLRB proceedings are unaffected by the automatic stay. *See In re Nicholas, Inc.*, 55 B.R. 212, 214 (Bankr. D.N.J.1985). All of these courts recognized that NLRB proceedings may result in monetary awards against the debtor, yet all ruled that the hearings were not stayed by the debtor's petition for relief. Nevertheless, *Organized Maintenance* found these cases inapplicable, declaring that

back pay awarded in NLRB proceedings is a "sanction" imposed for violation of law, whereas findings and awards by the Secretary of Labor for violations of the Service Contract Act are not "sanctions". The relevance of this claimed distinction is questionable.

Other proceedings involving federal agencies have been excepted from the automatic stay as well. *See, e.g., E.E.O.C. v. McLean Trucking Industries,* 834 F.2d 398 (4th Cir.1987) (action brought by Equal Employment Opportunity Commission not subject to stay); *E.E.O.C. v. Rath Packing Co.,* 787 F.2d 318 (8th Cir.1986) (same); *Donovan v. TMC Industries, Ltd.,* 20 B.R. 997 (Bankr.E.D.Ga.1982) (FLSA enforcement); *In re Tauscher,* 7 B.R. 918 (Bankr. E.D.Wis.1981) (assessment of penalties for violating FLSA). The District Court for the District of Columbia also rejected the *State of Missouri* analysis in automatic stay litigation involving the Federal Trade Commission. *See FTC v. R.A. Walker & Associates, Inc.,* 37 B.R. 608 (D.D.C.1983). The Court noted that *State of Missouri* "clearly presented a preemption problem." *Id.* at 611. Furthermore, in *Rath Packing,* the Eighth Circuit extensively discussed the relationship between its decision in *State of Missouri* and actions brought by federal regulatory agencies. 787 F.2d at 324. The court held that the EEOC action not only benefits specific individuals but also "vindicate(s) the public interest in preventing employment discrimination". *Id.* at 325 (quoting *General Telephone Co. v. EEOC,* 446 U.S. 318, 326, 100 S.Ct. 1698, 1704, 64 L.Ed.2d 319 (1979)). As such, the court considered the EEOC action exempt from the automatic stay: the potential entry of back pay awards for victims of the debtor's discriminatory practices did not make the EEOC's action a violation of the "pecuniary purpose" test. Likewise, in *McLean Trucking,* the Fourth Circuit agreed that the "EEOC's pursuit of pecuniary relief under Title VII is different from an action for money damages under a law not primarily related to the public interest." 834 F.2d at 403.

A recent case involving administrative proceedings by the Department of Energy makes clear an issue frequently confused when the "pecuniary purpose" test is applied. In *CPI Crude, Inc. v. United States Department of Energy* ("DOE") 77 B.R. 320 (D.D.C.1987), the District Court considered the debtor's claim that administrative proceedings by the DOE commenced during the pendency of the bankruptcy action protected a pecuniary interest and, therefore, violated the automatic stay. The court rejected this contention, declaring:

> While it is true that the assessment by the government of a debtor's liability for violations of law may look like the "protection of a pecuniary interest," such a reading of section 362(b)(4) and of that provision's legislative history would render the exception unworkable. It is generally the case that the government regulates private conduct by establishing penalties for certain violations of rules it prescribes. This does not mean that when it seeks to enforce the regulatory scheme in question, it is merely seeking to protect some "pecuniary interest" in the monies represented by the penalties or damages levied. To hold otherwise would be to read subsection (b)(5) out of the statute, at least to the extent that it "permit[s] the entry of a money judgment" against the debtor. H.R.Rep. No. 95–595, 95th Cong. & Admin.News 1978, p. 6299. Under the "pecuniary interest" test as it seems to be applied, a money judgment could *never* be entered against a debtor, thus triggering the automatic stay. If it is necessary to give meaning to Rep. Edward's suggesting that section 362(b)(4) does not give relief from a stay where the government seeks to protect a pecuniary interest, one can conceive of situations in which the government might be seeking to perfect an interest in the debtor's property for its own account. *See, e.g., In re Coleman American Cos. Inc.,* 26 B.R. 825 (Bankr.D.Kan. 1983) (post-petition IRS assessments void as violative of stay).

*Id.* at 323.

■ Although *Organized Maintenance* opined "there seems no reason why" enforcement of the Service Contract Act

should not be stayed, "why employee-creditors should be put in a preferred position over other creditors", 47 B.R. at 796, the court ignored "a more fundamental policy involved, that policy being the public interest in the enforcement of a social remedial Act of Congress." *Donovan v. TMC Industries, Ltd.*, 20 B.R. 997, 1002 (Bankr.N.D.Ga.1982) (quoting *In re Joydon, Inc.*, 4 Bankr.Ct. Dec. 166, 167 (Ref.N.D.Ohio 1978) [available on WESTLAW, 1978 WL 1613], a Service Contract Act case decided under the Bankruptcy Act). The purpose of the Service Contract Act is to set labor standards for service contracts made with federal agencies. *See* S.Rep. No. 798, 89th Cong., 1st Sess., *reprinted in* 1965 U.S. Code Cong. & Ad.News 3737; H.R.Rep. No. 948, 89th Cong., 1st Sess. (1965). While these standards do protect employees, they also protect competitors from unfair competition by employers paying subminimum wages. *Id.* at 3739. These measures also help ensure that the government will not benefit from unpaid labor, a policy interest of the United States. *See* 29 C.F.R., subtitle A, § 4.187. Thus, the Service Contract Act, including provisions for its enforcement, was enacted to assure compliance with wage standards considered to be in the public interest. Coloring the Secretary's action here as "primarily" for a "pecuniary purpose" would be a simplistic view of the situation. Because the Secretary is proceeding to preserve and protect a valid public interest, this Court finds the action falls within the exception to the automatic stay granted by section 362(b)(4).

In addition to requesting that this Court declare his action excepted by section 362(b)(4), the Secretary also asks this Court to determine that the funds withheld by the employing agencies are not property of the estate.

■ To date, several courts have declared that the trustee in bankruptcy is not entitled to money withheld under the Service Contract Act. Generally, these decisions have reached the same conclusion from two different approaches. The first considers that the debtor's breach causes the funds to be impressed with a trust, either constructive or statutory, for the benefit of the undercompensated employees. Alternatively, courts have held that the non-breaching party has the right to recoup any damages caused by the breach from any funds otherwise due the debtor in the same transaction. Under this theory, to the extent the damages equal or exceed the funds withheld, the debtor has no interest in the funds and, therefore, the stay has not been violated.

The more common approach relies primarily on *Pearlman v. Reliance Insurance Company*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962). In *Pearlman*, the Supreme Court ruled that a surety who has paid employees under a performance bond has priority over the trustee in bankruptcy to funds withheld under a government contract. 371 U.S. at 141–42, 83 S.Ct. at 237. The trustee in the case at bar attempted to distinguish *Pearlman* by noting that the issue in that case involved the rights of a surety, not the government's right to withhold funds. This distinction is untenable. The trustee failed to note that the Court held the surety's rights were derived from the government's. The Court *first* ruled that the government had an equitable right to retain contract funds for the benefit of the unpaid laborers. The Court then ruled that the surety, having paid the laborers, could resort to the same remedies available to the government. If a surety whose rights are derivative has priority over the bankruptcy trustee, then plainly the government has priority as well. *See id.* at 141, 83 S.Ct. at 2370.

Several bankruptcy courts have relied directly on *Pearlman* to exempt the Secretary and his direction to withhold from the ambit of § 362(a). For example, *In re Security Unlimited Enterprises, Inc.*, 96 Lab. Cas. (CCH) ¶ 34,316 (Bankr.N.D.Ill.1986) declared that monies withheld under the Service Contract Act "are not property of the estate of the debtor for the purpose of the BRA (Bankrutpcy Reform Act)." *Id.* at 45,418 (parenthetical supplied). Again, in *In re G.R. Rankin Security Service*, 26 Wage & Hour Cas. (BNA) 632 (Bankr.M.D.N.C.), the bankrupty court relied on *Pearlman* to find that "such funds are the (Secretary's) plaintiff's property and are due to be returned to the plaintiff." (parenthetical sup-

plied). *See also, In re Quinta Contractors, Inc.,* 34 B.R. 129 (Bankr.M.D.Pa.1983) (holding that up to the extent of wage violations, payments withheld under similar provision of Davis–Bacon Act are not property of the estate). The Comptroller General also cited *Pearlman* as authoritative when ruling that wage underpayment claims under the Service Contract Act have priority to funds held by the government over any claim by the trustee in bankruptcy *See In re Cascade Reforestation, Inc.,* 56 Comp.Gen. 499 (1977).

Similarly, another bankruptcy court, in a case directly on point here, relied on *Pearlman* to rule that post-petition withholding did not violate the automatic stay because the funds withheld were not property of the estate. *See In re Frank Mossa Trucking, Inc.,* 65 B.R. 715, 104 Lab.Cas. (CCH) ¶ 34,786 (Bankr.N.D.Mass.1985). The *Mossa* court specifically noted the legislative history of § 541, quoting these Historical and Revision Notes from Senate Report No. 95–989:

> "Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another.... This section ... will not affect various statutory provisions that give a creditor of the debtor a lien that is valid outside as well as inside bankruptcy, or that creates a trust fund for the benefit of a creditor of the debtor."

65 B.R. 718 n. 3, 104 Lab.Cas. (CCH) at 44,419, n. 3. In *Pearlman,* the Supreme Court reached its conclusion that the government and, therefore, the surety had priority over the trustee even while acknowledging "there is no statute which expressly declares that a surety does acquire a property interest in a fund like this." 371 U.S. at 136, 83 S.Ct. at 235. While citing and discussing *Pearlman* with approval, the *Mossa* court went further, finding that the express provisions of the Service Contract Act create a statutory trust for the benefit of undercompensated employees, so that funds withheld or to be withheld in accordance with the statute are not the property of the estate.

Other federal decisions buttress the conclusion in *Mossa.* For example, funds withheld pursuant to the Secretary's request under the Service Contract Act were held not subject to garnishment, even though the administrative process that would determine the claim had not yet commenced. *Amoco Oil Co. v. Southeastern Mail Transport,* 628 F.Supp. 37 (M.D.Fla.1985). In *Amoco Oil,* a non-bankruptcy case, a judgment creditor sought to garnish contract payments held by the government, which the Secretary of Labor had directed the contracting agency to withhold from the debtor pending resolution of Service Contract Act violations. The court held that neither the debtor nor, therefore, the garnishor was entitled to the funds until the administrative proceedings were concluded and the employees compensated in accordance with the Service Contract Act. *Id.* at 38. Other authority has held that a contractor who breaches his obligations under the Service Contract Act is divested of all interest in withheld funds up to the amount of the violation even if the unpaid employees cannot be compensated because they cannot be found; instead, the money goes to the United States Treasury. *See American Waste Removal Company v. Donovan,* 748 F.2d 1406 (10th Cir.1984).

Furthermore, regardless of the Secretary's action, the contracting agencies are entitled to withhold payment from Career Consultants, Inc. ("CCI"), and, therefore, the trustee. It is undisputed that CCI failed to perform in accordance with the contract's terms, one of which was to comply with the requirements of the Service Contract Act. The government's bargained-for-exchange was not only the provision of services but also the promise that the employees would be paid in accordance with federal law. The United States requires this clause in its service contracts to ensure that the government will not benefit from unpaid labor. *See* 29 C.F.R. Subtitle A § 4.187. Upon the contractor's breach of this promise, the government was entitled to withhold funds sufficient to remedy the breach under principles of recoupment.

Even without the express contract term, courts have held that a failure to pay for labor is tantamount to an abandonment of

the work. See, e.g., *In re Pacific Marine Dredging and Construction*, 79 B.R. 924, 16 Bankr.Ct.Dec. (CRR) 915 (D.Oregon 1987); *United States v. Commonwealth of Pennsylvania, Department of Highways*, 349 F.Supp. 1370 (E.D.Pa.1972). *Pacific Marine* declared that the debtor had no legal or equitable interest in contract funds held by the plaintiff county service district because the debtor's failure to pay for labor was a breach of contract relieving the plaintiff of the obligation to pay the debtor. Accordingly, the court held the fund was not property of the estate. 79 B.R. at 928, 16 Bankr.Ct.Dec. (CRR) at 918. Furthermore, since the debtor had no rights to the fund, neither could the secured lender's interest attach to the fund. *Id.*

It is well-established that a petition in bankruptcy does not affect the right to recoup damages for breach of a contract against funds otherwise due under the same contract. *See, e.g., Lee v. Schweiker*, 739 F.2d 870, 875 (3rd Cir.1984); *In re Alpco*, 62 B.R. 184, 188 (Bankr.S.D.Ohio 1986); *In re Clowards*, 42 B.R. 627, 628 (Bankr.D.Ohio 1984); *In re Yonkers Hamilton Sanitarium*, 34 B.R. 385, (S.D.N.Y. 1983); *Waldschmidt v. CBS, Inc.*, 14 B.R. 309, 314 (M.D.Tenn.1981). *See also Collier on Bankruptcy*, ¶ 553.03 (15th ed. 1987). The Fourth Circuit acknowledged the doctrine of recoupment and distinguished it from a setoff in *First National Bank of Louisville v. Master Auto Service Corporation*, 693 F.2d 308 (4th Cir.1982). There the court stated, "[A] set-off is a counterclaim arising from an independent claim the defendant has against the plaintiff. Recoupment is the right of the defendant to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against the plaintiff arising out of the very contract giving rise to the plaintiff's claim." *Id.* at 310, n. 1. Because recoupment adjusts liability on an individual transaction, recoupment should be allowed regardless whether the breach occurred prepetition or postpetition. *In re Clowards*, 42 B.R. at 628.

Since the trustee takes property subject to rights of recoupment, the only remaining question is who determines the amount to be recouped. Because a claim in recoupment is essentially a defense to liability for funds otherwise due the estate, this Court could determine the matter. It is the conclusion of this Court, however, that the administrative proceedings initiated by the Secretary provide the proper forum for resolving this issue, subject to final review by this Court. To the extent the funds withheld by the Secretary's direction exceed the debtor's liability as determined by the administrative process, the excess is property of the bankruptcy estate. *In re Quinta Contractors, Inc.*, 34 B.R. 129 (Bankr.M.D.Pa.1983).

By ruling that, to the extent of the debtor's liability, the funds withheld are not property of the estate, this Court holds only that the Secretary holds a right to these funds superior to the trustee. A surety, not a party to this proceeding, also claims a right to the same funds in a related adversary proceeding. This ruling does not resolve the priority between the Secretary and the surety. Although a competing claim may exist, because these funds are not property of the estate, any such claim is not properly before this Court.

An appropriate order shall issue.