[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 20, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-14588
Non-Argument Calendar
_____

D. C. Docket No. 03-00614-CV-T-17MAP

PATRICIA LYNN FRY,

Plaintiff-Appellant,

versus

HILLSBOROUGH COUNTY SCHOOL BOARD, FLORIDA,
LIZETTE RAIG ALEXANDER,
JOYCE MILES,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(July 20, 2006)**

Before TJOFLAT, BIRCH and BARKETT, Circuit Judges.

PER CURIAM:

Patricia Lynn Fry appeals pro se the district court's denials of her numerous pleadings and its grant of summary judgment to the individual defendants named in Fry's complaint, Lizette Raig Alexander and Joyce Miles, employees of Fry's former employer, the School Board of Hillsborough County, Florida (the "Board"), In her pro se civil rights action filed pursuant to 42 U.S.C. § 1983, Fry alleged discrimination and retaliation based on the exercise of her First Amendment rights. The district court concluded that Alexander and Miles were entitled to qualified immunity. Concluding that there is no reversible error, we AFFIRM.

## I. BACKGROUND

Fry, a school psychologist by occupation, filed a complaint on 3 April 2003 against the Board and Board employees Alexander and Miles, claiming discrimination and retaliation under the Americans with Disabilities Act ("ADA") of 1990, 42 U.S.C. § 12101 et seq., and the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 791 et seq. Fry alleged, inter alia, that: (1) in June 2001, Alexander reassigned her to Oak Park Elementary School ("Oak Park"); (2) Fry sent e-mails to several individuals requesting additional Exceptional Student Education ("ESE") support for Oak Park; (3) after the e-mail communication, Fry was reprimanded by Miles, the principal, for "telling Oak Park business"; and (4) on 20 March 2002, Fry was informed that her contract would not be renewed. R1-1 at 7,

12, 20. Fry further alleged that, throughout her employment with the Board, she voiced her concerns that the Board was not complying with the procedural requirements of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., and the RA with regard to its students, but she was instructed to ignore the problems. In her prayer for relief, Fry sought reinstatement, compensatory damages, and injunctive relief that the defendants be prohibited from violating her rights under the First Amendment.

The Board alone answered the complaint. The defendants simultaneously filed a partial motion to dismiss the complaint, arguing, inter alia, that: (1) the ADA and RA claims against Alexander and Miles in their individual capacities should be dismissed; and (2) to the extent that Fry raised a First Amendment claim, her complaint did not allege that she engaged in protected speech or otherwise was subjected to an adverse employment action based on her engagement in protected speech. Fry responded, clarifying, inter alia, that she was attempting to raise a First Amendment claim. She alleged that the defendants retaliated against her by transferring her to Oak Park for advocating for proper utilization of ESE resources and for the rights of people with disabilities, which were matters of public concern that were outweighed by the Board's interest in preventing her speech.

Fry then filed a motion to disqualify the Board's counsel, Thomas Gonzales,

3

based on: (1) a conflict of interest, as Fry had communicated with Gonzales prior to her complaint being filed; (2) Gonzalez's failure to communicate to Fry the scope of his representation of the Board; (3) Gonzalez's inappropriate behavior; and (4) his potential to be a substantial witness in the case. During an evidentiary hearing on the issue, Gonzalez testified that, in his earlier conversation with Fry, it was clear that he and Fry were on opposite sides and that he never told Fry that he represented her. Gonzales also stated that he did not expect to be a witness in the case. The court denied the motion, noting that Fry's belief that Gonzalez was an integral part of the decision not to renew her contract was not enough, without evidence to support it, to require him to withdraw.

On 3 July 2003, the district court dismissed Fry's ADA and RA claims against Alexander and Miles as individuals, but found that her complaint sufficiently stated a First Amendment claim, ordering that the defendants had ten days to answer the complaint. On 14 July 2003, the Board alone filed an amended answer, but, on 24 July 2003, all three defendants filed a second amended answer, noting that while it was unclear from the complaint whether Fry intended to assert a First Amendment claim against Alexander and Miles as individuals, they were responding to the complaint out of an abundance of caution, and raised the defense of qualified immunity. On that same day, Fry filed a "Partial Motion for Default

Judgment Due to Defendants' Failure to Comply with a Court Order," explaining that, on 23 July 2003, she learned that Alexander and Miles had not filed an answer and called the defendants' counsel, Thompson, Sizemore, & Gonzalez ("the Firm"), which informed her, with "hostility and contempt," that the district court's order did not require Alexander and Miles to respond. R2-24 at unnumbered 1, 4. She argued that the court should award a default judgment in her favor due to Alexander and Miles's failure to answer her complaint and asked for sanctions against the Firm for willful and negligent conduct. The district court summarily denied the motion.

Fry also filed motions for a preliminary injunction and a temporary restraining order ("TRO"), seeking to prevent the defendants from revoking her group health benefits and reproducing confidential information, such as social security numbers, found in Fry's personnel files. After a hearing on the motions, at which Fry explained her recent discovery that confidential records from Oak Park had been subpoenaed in a different lawsuit against a school district in Georgia, a magistrate judge recommended denying the motions, finding that they sought relief for claims separate from those in this lawsuit. The district court then denied the motions over Fry's objections and denied Fry's later motion to alter or amend the order. Fry later filed an interlocutory appeal of the denial of her motions for a

5

preliminary injunction and TRO, which we dismissed for want of prosecution.

On 15 July 2004, Fry filed a motion to amend her complaint to include additional facts that took place after March 2002, when she filed her original charge with the Equal Employment Opportunity Commission ("EEOC"), and attached (1) a copy of a second EEOC charge, dated 19 March 2004, alleging that the Board retaliated against her by denying her COBRA health care benefits, and (2) a right to sue letter. She claimed that the defendants retaliated against her, because she was a litigant in another ADA and RA case in Georgia, by interfering with her health benefits and placing confidential information about students and staff in her personnel file without notice, in violation of state law. The district court denied the motion, finding that, to the extent that Fry was alleging the same claims as she made in her motions for a preliminary injunction and TRO, such claims previously had been considered and denied, and, in any event, Fry had failed to show that the new facts occurred after the filing of her original complaint, and had failed to exhaust her administrative remedies, under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., regarding the denial of her health care benefits. Finally, the court determined that, to the extent that Fry alleged claims on behalf of third parties, she lacked standing.

Fry also filed a motion for "discovery guidance," and a hearing was held on

the motion. At the hearing, Fry explained that she was having trouble deposing witnesses and that she was hindered by confidentiality issues from completing her discovery process, since she wanted to discuss school records pertaining to certain students. During the hearing, the magistrate judge explained the concept of summary judgment to Fry, stating that "the basis for [Federal Rule of Civil Procedure 56] is that if there are no disputed issues of fact and someone's entitled to judgment as a matter of law, they get it." R7-115 at 27-28. The magistrate judge denied Fry's motion, except for her request to use confidential student records during depositions. Fry then filed an emergency writ of mandamus, asking the court to give her additional time for discovery, amend and/or clarify several of its orders, clarify the status of her First Amendment claims, advise her whether she had permission to file items under seal, and give her other guidance. The court summarily denied the motion.

Following discovery, each defendant filed a motion for summary judgment. In support of their motions, the defendants filed several depositions with attached exhibits, affidavits, and case law. In her deposition, Fry testified that she had two masters degrees in special education and educational psychology and was disabled. She stated that Alexander hired her as a school psychologist for the 2000-2001 school year at Lopez Elementary School ("Lopez") and that part of her job was to

7

perform evaluations and re-evaluations on students who were referred to her and to participate in the pre-referral process. In April 2001, her immediate supervisor, Michael Cummings, told her that he and Leila Leverett, Lopez's principal, had decided to explore other positions for her because Lopez was potentially in trouble for procedural violations regarding the schools's use of psychological services. Fry explained that she had questioned why the school was allowing the psychologists to evaluate the same children multiple times for their potential placement in the gifted program. In response to her questions, Fry stated that she was told to "lay low." R. Exh. 1-124 (Fry Deposition), at 179. Fry further testified that Leverett told her that she was being transferred because Fry had a personality conflict with another Lopez employee, and, although she was a good psychologist, Leverett did not have a choice.

Fry was later transferred to Oak Park. She testified that, on many occasions, she spoke up about children whom she believed were being mistreated at Oak Park, including one child whom Miles, Oak Park's principal, left in a classroom for mentally handicapped children, when she should have attempted to "mainstream" the child. Id. at 321. According to Fry, she brought these issues to the attention of Edward McDowell, who responded that the issues would be taken care of immediately and asked her to tell him about any other issues that arose in the

8

future. Later, she learned that her comments were interpreted as "[Fry is] going to get the school district sued," and suspected that the loss of her job had to do with her comments. Id. at 324. Fry stated that, during the 2001-2002 school year at Oak Park, she completed over eighty-seven cases which required a "write-up," as well as "many" evaluations and testing of students. Id. at 329-31, 334. Fry denied having conflicts with several employees. Finally, Fry stated that she received an evaluation on 14 March 2002, advising her that, based on Miles's observations of Fry's performance and feedback from Fry's county-level supervisor, Miles was not renominating Fry for the 2002-2003 school year.

As exhibits to Fry's deposition, the defendants attached a copy of Fry's spring evaluation, dated 11 February 2002, in which Miles noted, inter alia, that Fry needed improvement in using time efficiently, following standards of ethical conduct, seeking and using collaborative consultation with colleagues and administrators, and maintaining flexibility in performance of responsibilities; and was unsatisfactory in working with a minimal amount of supervision, demonstrating skills in mental health counseling, and speaking positively and constructively with students. Also attached was a letter addressed to Fry from Miles, dated 14 March 2002, summarizing the reasons for Fry's spring evaluation, including that: (1) Fry had an excessive number of late arrivals to school; (2) Fry's

9

comments and actions indicated an unwillingness to respect and consider other points of view; (3) on several occasions, Fry abandoned her responsibilities at Oak Park; (4) Fry had made disparaging remarks about the student population that had made Miles uncomfortable; and (5) Fry had not completed a reasonable number of evaluations during the course of the year.

In her deposition, Alexander testified that she was employed by the Board as a departmental supervisor for the school district's psychology program. She stated that Fry was moved to Oak Park because she was having inter-personal issues with the staff at Lopez, and the staff essentially had threatened to quit if Fry returned. Alexander's decision to support Fry's non-renomination at Oak Park was based on many factors, including that Fry made the staff uncomfortable by referring to the children as "ADD, crack babies and drug exposed" and a handicapped condition as a "gimp." R. Exh. 1-122 (Alexander Deposition) at 108-09. She noted that Fry could not get along with others and required "an enormous amount of supervision," and that she had "never seen a situation that required that much administrative support o[f] a psychologist." Id. at 122-23. Alexander explained that, while there is not a minimum number of evaluations required, a psychologist must address the evaluation needs without the assistance of anyone else, but "[t]hat did not occur at Oak Park." Id. at 126.

Miles testified that she was the principal of Oak Park during the 2001-2002 school year. She explained that part of her decision not to renominate Fry was based on Fry's interpersonal skills. She stated that she met with Fry several times to talk to her about working with the team and improving her case load and interpersonal skills. Miles also testified that Fry came into work late eighteen times without a doctor's excuse, and that, during one meeting, Fry refused to test a child, even though the rest of the team recommended that the child was ready for testing. Additionally, according to Miles, when a parent disagreed with Fry's comments at a meeting, Fry left the room and "did not want to hear that parent's point of view." R. Exh. 2-121 (Miles Deposition) at 200. Any time that Fry was upset about something, Miles continued, Fry would drive to her supervisor's office to ask that she handle the situation. One time, according to Miles, Fry's purse was taken, and Fry called the children thieves and threatened to have them all arrested. Miles further explained:

> [W]henever there was a meeting and it didn't seem to be going [Fry's] way . . . , either she would leave the meeting or hit on the desk or curse me out for -- for a schedule, and I thought that was being insubordinate. And when [Fry] was asked to do some testing, if it wasn't the . . . student that she wanted to do it, she would ignore the request . . . .

Id. at 215-16. In her affidavit, Miles stated that she never reprimanded Fry for sending an email regarding ESE services; that Fry had at least eighteen late arrivals

11

to school, and she could not excuse Fry's repeated tardiness for reasons such as traffic; that Fry's assignment to Oak Park was not punitive; and that she did not retaliate against Fry for exercising her First Amendment rights, but recommended that Fry's contract not be renewed for the reasons set forth in her performance evaluation.

In support of her motion for summary judgment, Alexander argued that Fry failed to prove a First Amendment violation because Fry did not speak on a matter of public concern, her speech was not a substantial factor in her termination, and her contract would have been terminated even in the absence of her allegedly protected speech. Alexander also argued that she was entitled to qualified immunity because Fry failed to prove that a constitutional violation had occurred, and the law was not clear that Alexander would be subjected to liability for retaliatory discharge, since she terminated Fry for performance issues. Miles filed a nearly identical motion and memorandum.

Fry requested an enlargement of time to respond to the defendants' motions, indicating, inter alia, that she had completed numerous discovery tasks, including taking ten depositions and making record requests, but needed more time to review the defendant's evidence and complete her own discovery. On 10 June 2005, the district court granted the motion, ordering that Fry's response be filed by 27 June

12

2005.

On 27 June 2005, Fry filed an emergency motion for an additional enlargement of time to respond, stating that her computer had crashed, which caused her to lose numerous documents, but she had received the remaining depositions and was ready to rescan her supporting documents and prepare her responses. The district court granted the motion, ordering that Fry's responses were due by 5 July 2005, and that there would be no further extensions of time.

On 5 July 2005, Fry responded to the motions, citing to the legal standard for summary judgment and arguing that the complaint, answers to the interrogatories, depositions, affidavits, and numerous exhibits demonstrated that Alexander and Miles had retaliated against her in violation of the First Amendment. Specifically, she argued, inter alia, that, because Alexander's and Miles's actions violated the "basic standard for public officials," they were not entitled to qualified immunity. Fry also filed a statement of material facts as to which a genuine issue existed and submitted numerous documentary materials, including depositions, exhibits, photographs, medical records, and copies of cases that she believed were relevant.

In an order dated 19 July 2005, the district court found that Alexander and Miles were entitled to qualified immunity and granted their motions for summary

13

judgment. First, the court found that, taking Fry's allegations as true for the purposes of summary judgment, the actions taken by Alexander and Miles could be seen as a violation of Fry's First Amendment rights. However, the court determined that, because the defendants asserted an adequate lawful motive for Fry's discharge, namely, her job performance, a reasonable public official in their positions could not have been certain that their actions were unlawful based on clearly established law. The court found that, even assuming that the defendants had a discriminatory motive for discharging Fry, they still were entitled to qualified immunity because an adequate lawful motive also was present.

Fry filed an emergency motion, pursuant to Rule 59(e), to alter or amend the district court's order granting summary judgment as to Alexander and Miles, arguing that the district court erred by focusing on the adverse action of her non-renomination and failing to address all of the other adverse actions by the defendants, noting that she had filed a supplemental EEOC charge in March 2004. She complained that she was not aware that she was required to fully argue the merits of her case at the summary judgment stage. She argued that, because the record did not indisputably establish that there was a lawful motive for her non-renomination, and there was a genuine issue of material fact as to whether her job performance was lacking, the defendants were not entitled to qualified immunity.

14

The district court denied the motion, noting that it found nothing in the motion that would require it to reverse its decision.

On appeal, Fry raises two issues: (1) whether the district court abused its discretion by denying Fry's numerous pro se pleadings, including her motions for a default judgment and to alter or amend the summary judgment order; and (2) whether the district court erred in granting summary judgment to Alexander and Miles, based on their qualified immunity. Because we dismissed Fry's appeal of the district court's grant of summary judgment to the Board for want of prosecution, we do not address that issue.

## II. DISCUSSION

A. <u>The Denial of Fry's Numerous Pro Se Pleadings</u>

Fry argues that the district court abused its discretion by "routinely" denying her motions for procedural clarifications, a default judgment, a preliminary injunction, discovery guidance, a writ of mandamus, and to alter or amend its summary judgment order, and by assuming that she knew what was being denied, which, as a pro se party, she did not. She contends that the district court's strict compliance with procedural rules violated its duty to liberally construe her pleadings.

We review most of the district court's denials of Fry's pretrial motions for

15

an abuse of discretion.  See  Cliff v. Payco Gen. Am. Credits, Inc., 363 F.3d 1113, 1121 (11th Cir. 2004) (reviewing district court's discovery rulings); Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1316 (11th Cir. 2002) (reviewing denial of motion for a default judgment); Sierra Club v. Ga. Power Co., 180 F.3d 1309, 1310 (11th Cir. 1999) (per curiam) (reviewing denial of a preliminary injunction); Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir. 1999) (reviewing ruling on motion to amend a complaint); Dist. Lodge No. 166, Intern. Ass'n of Machinists & Aerospace Workers, AFL-CIO  v. TWA Servs., Inc., 731 F.2d 711, 718 (11th Cir. 1984) (reviewing ruling on writ of mandamus); Thomas v. Farmville Mfg. Co., 705 F.2d 1307, 1307 (11th Cir. 1983) (per curiam) (reviewing ruling on Rule 59(e) motion to alter or amend judgment).  Furthermore, "district courts enjoy broad discretion in deciding how best to manage the cases before them." Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1366 (11th Cir. 1997).  "Courts do and should show a leniency to pro se litigants not enjoyed by those with the benefit of a legal education. Yet even in the case of pro se litigants this leniency does not give a court license to serve as de facto counsel for a party." GJR Invs. v. County of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (citation omitted). "[O]nce a pro se . . . litigant is in court, [s]he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure."

16

Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989). Here, because Fry fails to identify any specific error in the district court's denials of her numerous motions, and there is no evidence in the record that the district court's management of its docket was unfair to Fry, the district court did not abuse its discretion by denying these pre-trial motions. For example, because Fry's motion to alter or amend the district court's summary judgment order merely reargued her opposition to summary judgment, and failed to identify any manifest errors of law or fact or newly discovered evidence, the district court did not abuse its discretion by denying the motion.

In addition, although a district court may enter default judgment against a defendant who has failed to respond to a complaint against him, default judgments should only be entered if exceptional circumstances exist that prejudice the plaintiff. Mitchell, 294 F.3d at 1316-17; see Fed. R. Civ. P. 55(a), (b)(2). Moreover, we have held that "[t]he only grounds for granting [a Rule 59(e)] motion are newly-discovered [previously unavailable] evidence or manifest errors of law or fact." In re Kellogg, 197 F.3d 1116, 1119 (11th Cir. 1999). Rule 59(e) may not be used to relitigate a claim. Mincey v. Head, 206 F.3d 1106, 1137 n.69 (11th Cir. 2000). Because there is no evidence that Fry was prejudiced by the ten-day delay in the defendants' raising of the defense of qualified immunity, the

17

district court did not abuse its discretion by denying the motion.

Regarding Fry's motion to disqualify counsel, "[w]e review the district court's findings of fact for clear error and carefully examine de novo the district court's application of ethical standards." Bayshore Ford Truck Sales, Inc. v. Ford Motor Co., 380 F.3d 1331, 1338 (11th Cir. 2004). Here, because there was no evidence that Gonzalez previously represented Fry, such that he was operating under a conflict of interest, or otherwise behaved inappropriately, and Fry points to none, the district court properly denied her motion for disqualification of counsel.

B. Grant of Summary Judgment to Defendants

We review a district court's grant of summary judgment de novo. Patrick v. Floyd Med. Ctr, 201 F.3d 1313, 1315 (11th Cir. 2000). Federal Rule 56(c) states that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Regarding the district court's grant of summary judgment to Alexander and Miles, Fry raises three arguments. First, she argues that she did not receive actual or constructive notice of her requirement to respond to the defendants' summary judgment motions. Second, she argues that, because the defendants waived the

18

defense of qualified immunity by failing to raise it until their untimely second amended answer, the district court erred by determining that they were entitled to qualified immunity. Third, Fry contends that, because there was an issue of material fact as to whether the defendants had lawful reasons for deciding not to renew her contract for another year, the district court erred by finding that they were entitled to summary judgment, pointing out that she disputed Miles's and Alexander's evaluations of Fry, and their reasons for not renewing her contract. She argues that the district court erred by minimizing the circumstantial and direct evidence of retaliation that she submitted. She contends that the district court erred by essentially allowing the defendants to narrowly construe her complaint by limiting her First Amendment claims to protected speech and ignoring her claim that she engaged in protected activities, including her union activities.

1. Whether the Notice Requirement of Rule 56(c) Was Satisfied

"[A] court should be particularly careful to ensure proper notice to a pro se litigant." Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam). We have held that Rule 56(c) "requires that summary judgment cannot be entered against a party unless that person has been given express notice, ten days in advance, of his rights under that rule and how he might best defend them." Id. at 824. (quotations omitted). The notice requirement of Rule 56(c) requires, at a

minimum, "that an adverse party . . . be given express, ten-day notice of the summary judgment rules, of his right to file affidavits or other material in opposition to the motion, and of the consequences of default." Id. at 825.

Here, even assuming that the district did not give Fry express notice, the record conclusively establishes that, under the circumstances, it was reasonably apparent to Fry that she was required to submit all of her evidence in opposition to the motion. Moreover, after the defendants filed their summary judgment motions, Fry received two unopposed extensions of time to prepare her submissions in opposition to summary judgment. Additionally, her responses to these motions, which included deposition testimony, affidavits, and documents produced during discovery, specifically referenced the legal standard for summary judgment under Rule 56 and demonstrate the Fry understood its requirements. Thus, any error by the district court in failing to give Fry express notice of her rights and responsibilities under Rule 56 was harmless. See Restigouche, Inc. v. Town of Jupiter, 59 F.3d 1208, 1213 (11th Cir. 1995) (finding that failure to give notice under Rule 56 was harmless error when appellant "ha[d] not been deprived of the opportunity to present facts or arguments which would have precluded summary judgment"); see also Sawyer v. Am. Fed'n of Gov't Employees, AFL-CIO, 180 F.3d 31, 34-35 (2d Cir. 1999) (holding that notice is sufficient when the pro se

20

party "responds to the summary judgment motion with factual and legal submissions indicating that [s]he understood the nature and consequences of summary judgment and the need to set forth all available evidence demonstrating a genuine dispute over material facts" (quotations and citations omitted)).

    2.  <u>Whether Defendants Raised Affirmative Defense of Qualified Immunity</u>

Qualified immunity is an affirmative defense to personal liability that the defendant has the burden of pleading. <u>Gomez v. Toledo</u>, 446 U.S. 635, 640, 100 S. Ct. 1920, 1924 (1980). The failure to plead qualified immunity may result in a waiver of the defense. <u>See</u> <u>Barrett v. Thomas</u>, 649 F.2d 1193, 1201 (5th Cir. July 1981). However, we have held that "qualified immunity can be pled at various stages in a case[, and] . . . may be generally asserted (1) on a pretrial motion to dismiss under Rule 12(b)(6) for failure to state a claim; (2) as an affirmative defense in the request for judgment on the pleadings pursuant to Rule 12(c); (3) on a summary judgment motion pursuant to Rule 56(e); or (4) at trial." <u>Skrtich v. Thornton</u>, 280 F.3d 1295, 1306 (11th Cir. 2002). We warned that "[t]he potential for abusive delays or manipulative uses of qualified immunity claims is clear, as a defendant can raise the defense at various stages of litigation . . . . Defendants who abuse the pretrial process through such stalling, however, may waive their right to

21

raise the defense at the pretrial stage." Id. (citation omitted).

Here, the defendants asserted the defense of qualified immunity in their second amended answer, which was their first responsive pleading after their motion to dismiss and which, although untimely by ten days, was accepted by the court. There is no evidence that the defendants' failure to timely respond to Fry's complaint was intentional, abusive, or prejudicial to Fry. Thus, the defendants did not waive the defense.

### 3. Whether the District Court Erred in Granting Defendants' Motions for Summary Judgment on the Basis of Qualified Immunity

Qualified immunity provides complete protection for state officials sued in their individual capacities unless they have "violated a clearly established statutory or constitutional right[] of which a reasonable person would have known." Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003) (quotations omitted). The Supreme Court has set forth a two-part test for evaluating a claim of qualified immunity, with the threshold question being, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show [that the official's] conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). If a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine

22

"whether the right was clearly established." Id. "For the law to be clearly

established to the point that qualified immunity does not apply, the law must have

earlier been developed in such concrete and factually defined context to make it

obvious to all reasonable government actors, in the defendant's place, that what he

is doing violates federal law." Riley v. Newton, 94 F.3d 632, 636 (11th Cir. 1996)

(quotations omitted).

We have held that:

> when an adequate lawful motive is present, that a discriminatory
> motive might also exist does not sweep qualified immunity from the
> field even at the summary judgment stage. Unless it, as a legal matter,
> is plain under the specific facts and circumstances of the case that the
> defendant's conduct -- despite his having adequate lawful reasons to
> support the act -- was the result of his unlawful motive, the defendant
> is entitled to immunity. Where the facts assumed for summary
> judgment purposes in a case involving qualified immunity show
> mixed motives (lawful and unlawful motivations) and pre-existing law
> does not dictate that the merits of the case must be decided in
> plaintiff's favor, the defendant is entitled to immunity.

Foy v. Holston, 94 F.3d 1528, 1534-35 (11th Cir. 1996) (emphasis in original).

Thus, "[a] defendant is entitled to qualified immunity under the Foy rationale only

where, among other things, the record indisputably establishes that the defendant in

fact was motivated, at least in part, by lawful considerations." Stanley v. City of

Dalton, Ga., 219 F.3d 1280, 1296 (11th Cir. 2000) (emphasis in original).

Here, even assuming, as the district court did, that Alexander and Miles's

23

conduct violated Fry's First Amendment rights, there is undisputed evidence in the record that establishes that Alexander and Miles had lawful reasons for deciding not to renew Fry's employment contract, namely that the defendants were motivated, at least in part, by Fry's deficient work performance and interpersonal behavior. Thus, the district court correctly determined that they were entitled to qualified immunity.

### III. CONCLUSION

In her appeal of her pro se civil rights action, Fry has failed to show that the district court erred in denying her numerous pro se pleadings. She has also failed to show that the district court erred in granting the defendants' motions for summary judgment. **AFFIRMED.**